JOHN C. HEINTZ et al. *vs.* FRANCIS LEPAGE et al.

Penobscot.    Opinion December 8, 1905.

*Intoxicating Liquors.    Same Defined.    Action for Price.    Vendor's Non–knowledge of Purpose for Which Liquors are Purchased.*
*R. S., c. 29, § 64.*

Section 40 of Chapter 29, R. S., reads as follows: "No person shall at any time, by himself, his clerk, servant or agent, directly or indirectly, sell any intoxicating liquors, of whatever origin, except as hereinbefore provided ; wine, ale, porter, strong beer, lager beer and all other malt liquors, and cider when kept or deposited with intent to sell the same for tippling purposes, or as a beverage, as well as all distilled spirits, are declared intoxicating within the meaning of this chapter; but this numeration shall not prevent any other pure or mixed liquors from being considered intoxicating."

*Held:* That any liquor containing alcohol, which is based on such other ingredients or by reason of the absence of certain ingredients that it may be drank by an ordinary person as a beverage and in such quantities as to produce intoxication, is intoxicating liquor. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and drink it in such quantities as to produce intoxication, then it is intoxicating liquor within the meaning of the statute.

An action for the price of intoxicating liquors sold contrary to the laws of this state, cannot be maintained in the courts of this state.

It is immaterial whether the plaintiffs had any knowledge for what purpose the liquors were purchased if they were in fact intoxicating liquors and intended by the purchasers for illegal sale in this state.

On motion by defendants. Sustained. Verdict set aside. New trial granted.

Assumpsit on account annexed to recover $770 for "Paragon Malt Extract" sold and delivered by the plaintiffs, residents of the State of New York, to the defendants, residents of Maine, October 21st, November 5th, and December 19th, 1903, the entire quantity being 60 barrels containing 800 dozen or 9600 bottles. Tried at January term, 1905, Supreme Judicial Court, Penobscot County. Plea, the general issue with a brief statement alleging "that the claim or demand in the above entitled case is wholly for intoxicating liquors sold in violation of chapter 29, section 64, Revised Statutes of Maine, 1903, and in violation of chapter 27, section 56, Revised Statutes of Maine, 1883, then in force at the time said liquors were purchased."

Verdict for plaintiffs for $770. Defendants then filed a general motion for a new trial.

The case appears in the opinion.

*Bertram L. Fletcher*, for plaintiffs.

*H. H. Patten*, for defendants.

SITTING: EMERY, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SPEAR, J. This is an action of assumpsit to recover the sum of $770 on the following account. 1903, October 21st, to Mdse. $210. Nov. 5, to Mdse. $420. Dec. 19, to Mdse. $210. $840. The first charge in this account was for 20 barrels, 200 dozen Paragon Malt Extract. The second charge was for 40 barrels, 400 dozen Paragon Malt Extract. The third charge was for 20 barrels, 200 dozen Paragon Malt Extract. In other words, from the 21st day of October, 1903, to Dec. 19th, 1903, a little less than two months, the plaintiffs in this case sent to the defendants at Millinocket, Maine, 60 barrels containing 800 dozen, 9600 bottles of Malt Extract and

claim that it was sold and delivered for medicinal use by the inhabitants of this village. The defendant plead the general issue to the plaintiffs' declaration and for a brief statement in defense claimed "that the goods they purchased were intoxicating liquors, sold out of this state with the intention that they should be sold in this state in violation of chapter 29, R. S., sec. 64, which reads as follows: 'No action shall be maintained upon any claim or demand, promissory note or security contracted or given for intoxicating liquors sold in violation of this chapter or for any such liquor purchased out of the state with the intention to sell the same or any part thereof in violation thereof; but this action shall not extend to negotiable paper in the hands of a holder for a valuable consideration and without notice of the illegality of the contract.'" The undisputed facts regardless of the testimony of witnesses show conclusively that the plaintiffs knew that these malt extracts were intoxicating. We have no doubt that they were compounded as a subterfuge to avoid the effect of the prohibitory law of this state. The claim that they intended the sale of nine thousand six hundred bottles of this "Extract," for medicinal use only, in the village of Millinocket and vicinity, is utterly absurd. The quantity alone under the circumstances is sufficient to convince us that these extracts were intended to be sold as a beverage and not as a medicine. The other evidence in the case if any was needed thoroughly confirms this view. The plaintiffs' salesman admits that he told the defendants "so long as they sold malt extract as a medicinal preparation with the cork intact that it would be selling it just as safe as anything that they had in their store." Why this advice if the agent did not know that this preparation was intoxicating? What difference could it make if it was not intoxicating whether the cork was intact or not? But this is not all, six witnesses testified without contradiction that they drank these very goods, and five of them that they became intoxicated on them, and the other that he had seen many people get drunk on them.

It also appeared by the testimony of Prof. Knight, called by both the plaintiffs and defendants, that an analysis of several bottles of this extract showed that it contained from 4 39-100 % to 5 5-100 % of alcohol. The defendants were also compelled to pay a United

States internal revenue tax. This liquor was sold by the bottle and glass and the testimony shows that one person could drink two or three bottles at a time. From the testimony we should infer that it was drank practically the same as lager beer and ale. Over three hundred bottles were sold on one Fourth of July. The Justice presiding charged the jury as follows, with respect to what constituted intoxicating liquors: "So I repeat, any liquor containing alcohol, which is based on such other ingredients or by reason of the absence of certain ingredients that it may be drank by an ordinary person as a beverage and in such quantities as to produce intoxication, is intoxicating liquor. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and to drink it in such quantities as to produce intoxication, then it is intoxicating liquor." Under this definition, which is entirely accurate, and the evidence in this case, we hardly see how any question can be raised as to the intoxicating quality of the malt extract for which the plaintiffs seek to recover. The evidence indisputably shows that it could be drank in any quantity up to two or three bottles and by everyone who wanted to drink it and that it produced intoxication. It seems to us very clear that the plaintiffs must, when they sold these large invoices of goods, have understood the purpose for which they were bought.

It is, however, immaterial whether the plaintiffs had any knowledge for what purpose these extracts were purchased if they were in fact intoxicating liquors and intended by the purchasers for illegal sale in this state. *Knowlton in review* v. *Doherty*, 87 Maine, 518.

*Motion sustained. Verdict set aside. New trial granted.*