PEOPLE *v.* THOMPSON.

1. INTOXICATING LIQUORS—LOCAL OPTION — CRIMINAL PROSECU-
TION—EVIDENCE—ADMISSIBILITY.

On the prosecution of a registered pharmacist for keeping a
drug store for the unlawful sale of liquor in violation of the
local option law, it appearing that he sold liquors to persons
who stated they wanted it for medicinal use, testimony by
such persons as to the use made by them of the liquors so
purchased, as to which respondent had no knowledge, is inad-
missible. GRANT and MOORE, JJ , dissenting.

2. SAME—SALES BY DRUGGISTS—REPORTS—FAILURE TO MAKE—
EFFECT.

Failure of a druggist, keeping a drug store in a local option
county, to comply with section 25, Act No. 183, Pub. Acts
1899, requiring reports to the prosecuting attorney of sales of
liquor, does not render a sale otherwise lawful, unlawful,
though failure to comply with such statute, together with
other evidence, would be some evidence of the illegality of
the sale.

3. SAME—REPORT—RECORD—DISTINCTION.

Failure of the report of a druggist to the prosecuting attorney,
required by section 25, Act No. 183, Pub. Acts 1899, to comply
strictly with the law, is not evidence that the record required
by section 5381, 2 Comp. Laws, was not properly kept.

4. SAME—INSTRUCTIONS—GOOD FAITH.

An instruction requiring that a druggist act in "perfect good
faith" in selling liquor to persons who state to him that they
require it for a purpose not prohibited, creates a standard of
good faith greater than the law requires.

Error to Van Buren; Des Voignes, J. Submitted Octo-
ber 18, 1906. (Docket No. 166.) Decided March 12,
1907.

John F. Thompson was convicted of violating the local
option law, and sentenced to pay a fine of $200 or in de-
fault thereof to imprisonment in the county jail not ex
ceeding 60 days. Reversed.

*Cook & Chandler* ( *T. J. Cavanaugh*, of counsel ), for appellant.

*Russell M. Chase*, Prosecuting Attorney, for the people.

BLAIR, J. The respondent, Thompson, was prosecuted for and convicted of keeping a drug store in the village of Covert, in Van Buren county, for the unlawful sale of liquors in contravention of the local option law in force in said county. The respondent was a registered pharmacist and had complied with the provisions of the law authorizing sales of liquors by druggists. The people, to maintain their case, offered in evidence reports of respondent to the prosecuting attorney, made and filed under section 25, Act No. 183, of the Public Acts of 1899, covering the period from January 2d to the 1st of October, 1905, showing various sales of whisky and beer to various persons. In many instances the names of the purchasers were given by initials and not in full, as required by the statute, and in some instances, the quantity of liquor was not specified. In all instances, the purpose of the sale was stated to be for medicine. The people also called several of the witnesses named in the reports, who gave evidence tending to show that they purchased the whisky or beer of respondent at different times within the period of the reports, and the use to which the liquor was put. These reports, against respondent's objection, were all delivered to the jury for their consideration, although as to many of them no specific evidence was given. Respondent brings the record to this court upon writ of error, assigning 62 errors, upon all of which he relies. Many of the errors assigned are covered by previous decisions of this court and we do not deem it necessary to consider them. It is also contended by respondent that the court erred in permitting testimony to be given by purchasers of whisky or beer of the use made thereof after they had left respondent's premises, and, so far as this record discloses, without any knowledge on his part of such use.

This testimony should not have been permitted. The witnesses in question, who were called by the people, testified that they stated to the respondent that they wished to use the liquor purchased for medicine, and if the respondent sold the liquor, relying in good faith upon the statement of the purchaser, it was immaterial what purpose the purchaser put the liquor to after he had secured it.

Error is also assigned upon the following instructions:

"Now, I have read to you the statute wherein it appears that it is the duty of the druggist to record the full name of the purchaser, and if you find the fact to be that the druggist did not record the full name of the purchaser, as required by the law, I instruct you that such sales would be illegal sales, and that such record would not have been kept or made in compliance with the law.

"In construing this statute, gentlemen, I charge you, as a matter of law, that the full name means just what the statute implies; that is, if the full name of a Mr. Spivey is John V. Spivey and it should be written J. V. Spivey, that would not be his full name and would not be a compliance with the statute. This is true of each and every sale where you find the full name of the purchaser was not recorded. If you find such to be the fact, and in each and every instance where such full name of the purchaser was not recorded such sale would be an illegal sale, and if the jury find that there were any material number of such illegal sales, then I instruct you that the respondent would be guilty as charged in the indictment, with keeping a place in violation of law."

Although this portion of the charge apparently refers to the record required to be kept by druggists by section 5381, 2 Comp. Laws, such records were not introduced in evidence, and the statute read by the court was section 25 of Act No. 183 of the Public Acts of 1899, which reads as follows:

"Sec. 25. Every druggist keeping a drug store in any county adopting prohibition under this act shall make, and swear to or cause to be made and sworn to, a true written or printed statement signed and duly sworn to, by himself or his clerk, on Monday of each and every week, giving the full name and residence of every person procuring liquor at his drug store during the last week, the kind and

quantity of liquor procured, and the date of procuring the same and the object for which each purchase was made, and on such Mondays shall deliver or mail, prepaying the postage thereon, the same to the prosecuting attorney of the county where such store is situated, who shall preserve the same in his office, and all such statements shall be open to inspection to all citizens."

Inasmuch as the reports did show a material number of sales reported by initials to the prosecuting attorney, · this instruction was, in effect, a direction to find the respondent guilty. Whatever may be said of the record required to be kept by section 5381, 2 Comp. Laws, we think it clear that a failure to comply with the provisions of section 25 referred to by the court does not of itself make the sale illegal. This report is not made contemporaneously, is not required to be a copy of the record kept by the druggist, but is an independent report of sales made to the prosecuting attorney, for the apparent purpose of furnishing a public record from which all persons interested can ascertain whether the provisions of the law regulating sales by druggists are being observed. While a violation of the provisions of this section would subject the offender to punishment therefor, it would not of itself render a sale which was theretofore legal unlawful. We do not intend to intimate that a failure to comply with the provisions of section 25 would not be some evidence, in connection with other evidence, tending to show the illegality of a sale, but we do hold that such violation is not conclusive of the illegality of such sale. No evidence was introduced of the record kept by the druggist, and we cannot say from this record that the entries on the druggist's book were not kept as required by law. Section 5381, 2 Comp. Laws, does not require, in express terms, as does section 25 of Act No. 183 of the Public Acts of 1899, that the full names of persons applying for liquor shall be recorded, and it may be, although we do not decide this point, that the recording of the name by initials would be sufficient under said section 5381.

Complaint is also made of the following instructions:

"If he sells intoxicating liquors indiscriminately and for a beverage, he is liable under the law, and under this indictment. A druggist is not necessarily excused from liability because the purchaser states to him that the liquor is for medicinal, sacramental, mechanical, or scientific purposes. It is his duty to make such sales in perfect good faith—mark the language; not good faith, but perfect good faith."

We think the court went too far in this instruction. All that is required of a druggist is good faith, and there are no degrees of good faith. If the court had not emphasized the requirement of perfection of good faith as shown by the language quoted, but had confined himself to saying that perfect good faith was required, a different question might be presented; but by expressly making the distinction, the tendency was to create in the minds of the jury a standard for determining the good faith of respondent's sales which was greater than the law required.

We have examined with care the other assignments of error, but we do not think them well founded. With the exception of the errors which we have pointed out, we think the case was properly tried and submitted.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., CARPENTER, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred with BLAIR, J.

GRANT, J. Respondent kept a drug store in the township of Covert, in the county of Van Buren. He was indicted by the grand jury of that county for keeping a place, to wit, a drug store, where intoxicating liquors were sold in violation of the local option law which was in force in that county. The time covered by the indictment was from the 2d day of January to the 1st day of October, 1905. No specific acts of sale were alleged in the indictment.

In view of the questions raised, a fairly full statement of the evidence on the part of the people is essential. The defendant offered no testimony in his own behalf, except

that of one witness, as hereinafter stated. The evidence on the part of the people showed repeated and continuous sales, day after day, to certain persons in considerable quantities. In some instances the sales were several times a day to the same person. The weekly reports required by law to be made by the druggist to the prosecuting attorney were introduced in evidence and submitted to the consideration of the jury. One excerpt from the evidence will serve to show the character of these sales. The reported sales were to one Rodney Holston, and were as follows:

" June 1st, one quart of whisky. June 5th, 3 quarts beer. Again, June 5th, 3 quarts of beer. June 9th, 2 quarts of beer. June 10th, 3 quarts of beer. June 10th again, 6 ounces whisky. June 14th, 3 quarts beer. June 16th, 1 quart beer. June 16th again, 2 quarts beer. June 19th, 16 ounces whisky. June 20th, 3 quarts beer. June 20th again, 3 quarts beer. June 22nd, 3 quarts—no designation as to what it was. June 23d, 3 quarts beer. June 24th, 1 quart beer. June 26th, 12 ounces whisky. June 26th again, 8 ounces whisky. June 28th, 1 quart beer. June 30th, 3 quarts beer."

In a number of the sales the name of the purchaser was not stated in full as the law requires. In some instances the quantity of liquor sold was not stated.

The prosecution proved beyond doubt from several purchasers that the liquor was not purchased for any of the purposes permitted by the statute. One witness testified as follows:

" *Q.* Did you purchase three quarts of beer on June 14, 1905 ?

" *A.* Well, I bought beer there different times, a good many times, but I couldn't tell you the dates.

" *Q.* About how frequently were you in the habit of buying beer there ?

" *A.* Oh, I have been in there once or twice a day.

" *Q.* Once or twice a day ?

" *A.* Yes.

" *Q.* You may state whether or not you bought that for medicinal purposes.

" *A.* Yes, sir.

147 MICH.—29.

" *Q.* That is, I mean what you represented to him?
" *A.* Yes, sir.
" *Q.* What did you do with that beer?
" *A.* Why, I drank what I wanted. I took a drink of it when I wanted it. * * *
" *Q.* When you switch off from whisky to beer, about how much beer do you think as a general thing you require?
" *A.* Not over a bottle of beer at a time.
" *Q.* Well, about how many times a day do you require that bottle?
" *A.* Three or four."

Another witness testified that he purchased both whisky and beer—purchased whisky most.

" *Q.* When you made these purchases will you state what the purchases were for?
" *A.* Why, for medicine principally.
" *Q.* Well, now, will you explain what you mean by principally?
" *A.* I used a little around the barn for different purposes.
" *Q.* Well, now, I want to ask you this question: Are you troubled with any disease or difficulty which requires the use of liquor?
" *A.* Nothing more than my appetite. * * *
" *Q.* About how long would three quarts of beer last you as a rule for medicinal purposes?
" *A.* Oh, I might drink that in the forenoon. If I had a lunch at dinner time I sometimes drank beer with my lunch."

Another witness, a hotel keeper, testified that he made purchases of intoxicating liquors for medicinal purposes.

" Purchases were made partly for guests at the hotel, who might have need of it. * * *
" *Q.* What difficulty was you suffering with that required the use of this amount of beer for medicinal purposes?
" *A.* Why, nothing particularly. I suppose to get up an appetite. I bought it and drank it because I liked it."

Respondent called but one witness in his defense, and he was examined solely upon the " reputation of the store

being a quiet, orderly, well and lawfully conducted store."
Respondent made no explanation of these sales, or the un-
questioned violations of the law in making his reports to
the prosecuting attorney. The record contains all the
evidence produced in the case.

1. Was it competent to show that the liquors sold were
in fact bought by the purchasers and used by them as a
beverage after they had taken them away from the re-
spondent's drug store? Counsel cite no authorities upon
this question. After a somewhat careful search I have
been unable to find any. There are cases where the use
to which the liquor was put after the purchase was shown,
but no objection was made to its admission. The secret
intent of the purchaser is of course immaterial. The
question always is: Did the vendor act in good faith?
This question must be answered from the surrounding
circumstances and the facts of each case. There will be
cases where the question becomes one of law, and the
trial court will be required to determine whether there is
any evidence to show lack of good faith. In *State* v.
*Blair*, 72 Iowa, 591, it is said:

"There was evidence tending to prove that many of
the sales proven were made by defendant upon the naked
statement of the purchasers that they desired the liquor
for mechanical purposes. Now, when a man states that
he desires a bottle of beer, or a quart of whisky or black-
berry wine, for mechanical purposes, as was frequently
the case here, a question may arise fairly as to whether
he is telling the truth as to the use to which he intends to
put it. At all events it was for the jury to say whether
defendant did exercise reasonable diligence to ascertain
whether the liquor was in fact intended for that use when
he made the sales upon that naked statement."

In *Haynie* v. *State*, 32 Miss. 400, it was held that the
mere declaration of the vendee that he wanted the liquor
for medicinal purposes was not sufficient to protect the
druggist in the sale. The same rule was held in *State* v.
*Knowles*, 57 Iowa, 669. In *Heintz* v. *Le Page*, 100 Me.
542, it was held that knowledge of the purpose for which

the liquors were sold clearly appeared from the size of the invoices. In some jurisdictions where the sale is made under the privilege granted to a druggist by the law, it is held that the burden is upon him to show that he has sold within the privilege. Black on Intoxicating Liquors, § 210. If the druggist openly sells the liquor as a beverage, the fact that it is afterwards used as a medicine does not relieve him from his criminal liability, and its use after the sale is immaterial. But does that rule hold where the charge is that the liquor is sold ostensibly as medicine, but in fact as a beverage, and where the charge is that the respondent keeps a place for the sale of intoxicating liquors as a beverage? I think not.

It was necessary in this case for the jury to find that the respondent sold the liquor knowing, or having good reason to believe, that the purchasers did not desire it or buy it for medicinal purposes. The circumstances, as hereinafter shown, should certainly have put a reasonably prudent man upon further inquiry. I think it was competent to show that the liquor sold was used for illegitimate purposes. It would certainly have been competent for the respondent to show that the liquor was in fact used for medicinal purposes. He could have shown that a physician prescribed its use as a medicine for the various applicants. If, in addition to such evidence, the respondent himself had testified that he acted in good faith and in the belief that he was selling the liquors for medicinal purposes, he would have been entitled to an acquittal. The charge is not that of making an individual sale, it is of keeping a place for sale as a beverage. I think it was competent to show the use made of the liquors after sale. The court should instruct the jury what consideration, under the circumstances of each case, should be given to such testimony. Under the undisputed facts, the same men, day after day and sometimes two or three times a day, purchased intoxicating liquors upon the bare statement that the purchaser desired them for medicinal purposes. No other inquiry was made; no questions asked of the pro-

posed purchaser; in short, no effort made on the part of the respondent to inform himself. When these witnesses were questioned in court they readily testified that they did not buy the liquors for medicinal purposes. An inquiry by the respondent would probably have elicited the same facts that the witnesses testified to in court. Probably no jury of honest men would, under such a state of facts, have acquitted the respondent. To do so would virtually render the statute of no effect, and permit the existence of saloons under the guise of drug stores.

2. While the distinction between good faith—the perfect good faith—is somewhat shadowy, yet inasmuch as the authorities seem to have settled that good faith is all that the law requires, and that that good faith requires the druggist to take reasonable measures to ascertain the character of the proposed sale, I am inclined to concur with my Brother BLAIR that the court unduly emphasized the good faith with which the respondent was required to act.

3. I think the plain inference from the charge is that the presiding judge read to the jury not section 5381, 2 Comp. Laws, of the liquor law, but that he read section 25 of Act No. 183 of the Public Acts of 1899, which requires weekly reports to the prosecuting attorney, and that all his comments were based upon the latter statute. He prefaced the reading of the statute with the following:

" The statute requires the druggist each week to make a report to the prosecuting attorney, stating the details of the sales of liquors by him during the preceding week. The language of that statute is as follows."

He then read the statute, not section 5381, but section 25 of Act No. 183, Pub. Acts 1899. The use of the word " record," in his subsequent instruction, was, in my judgment, used in reference to the reports to the prosecuting attorney, and not to the record which the other law required him to keep in his store. The error, if any, in this

part of the instruction, is that wherein he instructed the jury that:

"If the jury find that there were any material number of such illegal sales [i. e., sales without entering the full names in the reports], then I instruct you that the respondent would be guilty as charged in the indictment with keeping a place in violation of law."

There were several sales in which the purchasers reported to the prosecuting attorney by initials instead of the full name. Under the instruction the jury may have found the respondent guilty on this ground alone. I agree with my Brother BLAIR in holding that the report by initials, made perhaps a week after the sale, does not render a sale, otherwise in compliance with the statute, illegal.

MOORE, J., concurred with GRANT, J.