STATE *vs.* JAMES WALLACE AND HARRY H. CLANCY.

Cumberland.    Opinion December 24, 1921.

*The question as to whether alcohol is an intoxicating liquor is a question of fact for the jury, and the jury have a right to take judicial notice of the fact that it is an intoxicant. In a liquor nuisance indictment, no specific place being named, adjoining premises, one used for hiding intoxicants, the other for illegal sale, it follows that the illegal use of any part of the premises thus connected to form one place or tenement and constitutes a nuisance.*

It is a matter of common knowledge that alcohol is an intoxicating liquor; used in sufficient quantity with other ingredients to produce intoxication, and under the law of this State is an intoxicating liquor. A jury has the right to take judicial notice of the fact that alcohol is an intoxicant.

In a liquor nuisance indictment where no specific place is name in the indictment, adjoining premises, one of which is used for hiding intoxicating liquors, and the other used for selling the same illegally, are not separate and distinct places or tenements. Such connection once established, it follows that the illegal use of any part of the premises thus connected to form one place or tenement would constitute a nuisance.

On exceptions. The respondents were indicted at the January term, 1921, of the Superior Court for Cumberland County, for maintaining a liquor nuisance. The jury returned a verdict of guilty. During the progress of the trial several exceptions by respondents were taken on which the case went to the Law Court. Exceptions overruled. Judgment for the State.

The case is fully stated in the opinion.

*Clement F. Robinson, County Attorney, and Ralph M. Ingalls, Asst. County Attorney,* for the State.

*William C. Eaton,* for respondents.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

HANSON, J.  This was an indictment for maintaining a liquor nuisance, and was returned by the grand jury at the January term, 1921, of the Superior Court for the County of Cumberland.

The jury returned a verdict of guilty as to each respondent, and the case is before the court on exceptions.

Exception 1 relates to State's Exhibit 2, claimed by the State to be intoxicating liquor.  After the evidence was closed, and before the case was given to the jury, respondents requested the presiding Justice to instruct the jury "that there was not sufficient evidence in the case to warrant them in finding that the contents of State's Exhibit 2 was intoxicating liquor within the meaning of those words as used in the Statutes of the State of Maine."  The request was refused and properly so.  There was positive evidence, uncontradicted, that Exhibit No. 2 not only contained alcohol, but was alcohol. It was for the jury, not the court, to decide whether or not "the contents of State's exhibit 2 was intoxicating liquor."

Exception 2 relates to the following language of the presiding Justice in his charge to the jury concerning the exhibit in the case, and the testimony of the officer who seized the exhibit and testified to the nature of its contents, namely:  "Counsel for the defense has alluded to the Exhibit No. 2, *the small bottle of alcohol,*" and in the next sentence but one of the charge, the following:  "You will judge of his knowledge of whether it was or was not (alcohol), and judge of whether you think there is any reason to believe that it was anything except what he testified it to be—*ordinary, drinkable alcohol.*"

Respondents' counsel contends "that the words of the phrase underlined were objectionable and exceptionable because, in the first phrase, his use of the words "ordinary, drinkable alcohol" were absolutely unwarranted and legally improper."  It is true that the witness did not use the exact words, "ordinary, drinkable alcohol," but he did testify in answer to defendants' counsel in cross-examination as follows:  "Q.—What do you know about it?  A.—I know it is straight alcohol."  Further answering in cross-examination, the witness repeated, "it is straight alcohol, grain alcohol;" that he could tell it was alcohol by smelling it; that it would burn, and that he had burned it, and that it did not contain formaldehyde.  In fact,

the only other question raised as to Exhibit 2 was "whether it was a beverage or not," and upon this point defendants' counsel stated his position very clearly, so clearly in fact, that the use of the words "ordinary, drinkable alcohol" could not have prejudiced the respondents. The presiding Justice very properly left the question as to whether it was intoxicating liquor to the jury.

The language objected to was not prejudicial to the respondents in view of the position of counsel, and the instructions as a whole. *State* v. *Piche*, 98 Maine, 348; *State* v. *Starr*, 67 Maine, 242; *State* v. *McCafferty*, 63 Maine, 223.

Counsel cites *Heintz* v. *LePage*, 100 Maine, 545, as defining the term "intoxicating liquor," viz.: "So I repeat, any liquor containing alcohol, which is based on such other ingredients, or by reason of the absence of certain ingredients that it may be drank by an ordinary person as a beverage, and in such quantities as to produce intoxication, is intoxicating liquor. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and to drink it in such quantities as to produce intoxication, then it is intoxicating liquor." The case thus cited but recognizes a conclusion reached in earliest times, and takes judicial notice that alcohol is an intoxicating liquor, and when diluted, or mixed with other ingredients, if the resultant liquid used in sufficient quantity produces intoxication, that mixture is, under our law, intoxicating liquor.

The statute names "wine, ale, porter, strong beer, lager beer and all other malt liquors . . . . and all distilled spirits as well as any beverage containing a percentage of alcohol, which by federal enactment, or by decision of the Supreme Court of the United States, now or hereafter declared, renders a beverage intoxicating" and declares that "this enumeration shall not prevent any other pure or mixed liquors from being considered intoxicating." (R. S., Chap. 127, Sec. 21 as amended by 1919, Chapter 235).

It is idle at this late day, in view of the world-wide knowledge and action upon the matter of suppression of the liquor traffic, to further discuss or to seek to refine a phase of the subject settled ages ago. What all the world knows and discusses, the trial court and jury may be presumed to know. It is a matter of common knowledge that alcohol is an intoxicating liquor; used in sufficient quantity with other ingredients to produce intoxication, under our law it is an intoxicating liquor. When the question is submitted as in this case,

in addition to the affirmative evidence, the jury had the right to take judicial notice of the fact that alcohol is an intoxicant. The testimony of the officer was competent to show what Exhibit 2 was. *Commonwealth* v. *Leo*, 110 Mass., 414; *Commonwealth* v. *Peto*, 136 Mass., 155. In *Commonwealth* v. *Peckham*, 2 Gray, 514, where in overruling exceptions to the refusal of the trial Judge to instruct the jury that the Commonwealth must prove that gin was intoxicating, and to an instruction that the jury might "infer" that it was intoxicating, the court said:

"Jurors are not to be presumed ignorant of what everybody else knows. And they are allowed to act upon matters within their general knowledge, without any testimony on those matters. Now everybody who knows what gin is, knows not only that it is a liquor, but that it is intoxicating. And it might as well have been objected that the jury could not find that gin was a liquor, without evidence that it was not a solid substance, as that they could not find that it was intoxicating, without testimony to show it so. No juror can be supposed to be so ignorant as not to know what gin is. Proof therefore, that the defendant sold gin is proof that he sold intoxicating liquor. If what he sold was not intoxicating liquor, it was not gin."

Exceptions 3 and 4 are based upon the same grounds. The indictment in the usual form charges the respondents with maintaining a liquor nuisance at Portland in said county in "a certain place, to wit, a tenement there situate." The "place" of business of respondents was at No. 30 India Street, and the State introduced evidence tending to show sales of intoxicating liquor at that place, which has already been considered under Exceptions 1 and 2. Exception 3 is to the admission of testimony connected with a vacant store adjoining No. 30 India Street and numbered 32. The testimony objected to disclosed that No. 32 which had been vacant for some months, was bolted and barred on the inside, and inaccessible from the outside except by breaking a door or window. Access was had in this manner by the officers, and the evidence shows that in that building was found a hide containing alcohol and whiskey in large quantities, and that from the cellar of No. 32 a well beaten path had been made from the stairway to and through a board partition to the cellar of No. 30.

Counsel in his brief urges that under such an allegation it is elementary that only one "place" is covered by the indictment, and cites *State* v. *Lashus*, 67 Maine, 564, in support of his contention, but in

that case the indictment for nuisance specified a certain locality and the court held that evidence could not be offered by the State as to a nuisance in any other locality.  That is the settled law in such cases, but as has been seen, no specific place was named in the instant case, and that being so we think upon reason and the weight of authority that the evidence offered by the State was clearly admissible in connection with the other testimony in the case, and that the presiding Justice was correct in his ruling.

It is doing no violence to settled rules of procedure to so hold, and while there has been no similar case in Maine heretofore, the same necessities from the nature of the business involved have produced such cases in other states, and will no doubt furnish other cases here.

Exception 4 was to that part of the charge of the presiding Justice in which he uses this language:  "Now, if either of these places were used for the transaction of this business in any of these methods, any of these respects, which are described in the indictment and are specified in the law, if either of these places, you find, have that characteristic, or if both of them have, and you find that '32' was actually used and occupied, although only for this purpose of hiding liquor, by the defendants, why, then the defendants would be responsible under this statute and under this indictment."

We discover no error in the instruction.  Analyzed, the language used presents but one question,—was No. 32 used by the respondents as a hiding place for intoxicating liquor which the respondents sold or intended to sell in No. 30.  This was an issue in the case, a question of fact for the jury and the jury alone.  Immediately following the words objected to, the presiding Justice instructed the jury as follows:  "So if you have a question about No. 32, you will inquire what the evidence leads you to conclude about No. 32 as well as No. 30.  That is a case of inferential conclusion from certain known facts, or facts brought before you in testimony which you find to be facts.  You will conclude what they mean.  There is nothing unusual about that. . . .  Now you have introduced here that kind of evidence in regard to the hide, in regard to the No. 32.  Was that No. 32 used in connection with No. 30 by these defendants?  Was there a passageway, a place there with these planks, these boards, in it, in the partition, so arranged that the two places were accessible?  Was there anybody else using that No. 32?  Was it accessible, as it stood, to anybody else?  What the Sheriff said about a path there,

the ladder and the trap-door, and the oilcloth, and the hide, and the liquor—does that lead you to a conclusion as to the purpose of that liquor, as to the control of that liquor, as to the control of that tenement? If you find that is so, then that belongs in this case, and it is for you to find as to that part of the testimony what your conclusion is as a matter of common sense and a matter of common judgment."

The contention of respondents' counsel is that No. 30 and 32 were separate and distinct "places or tenements," "and that any contention to the contrary is absolutely without foundation." That contention was very properly submitted to and determined by the jury, and they found that the "places" were not separate and distinct, and in this they were fortified by the law and the evidence. The jury could find from the evidence that No. 32 was used in connection with No. 30 by these defendants. Such connection once established, it follows that the illegal use of any part of the premises thus connected to form one place or tenement would constitute a nuisance.

In *Commonwealth* v. *Fraher*, 126 Mass., 56, the evidence offered under an indictment for nuisance, was in part that the defendant occupied the second story of a certain building for a dwelling, and the rest for other purposes, including one room on the first floor, which contained a bar. There was no direct evidence of illegality in this barroom, but there was evidence of illegality in a rear room connected with it. The defendant asked that the government be required to elect as to the premises on which it relied to make out the nuisance, but the judge refused, and ruled that the tenement might consist of two rooms used together, and immediately connected with each other, and "if the two were thus used, alternately or interchangeably . . . . they might be considered to be parts of one and the same tenement, *and the illegal use of either, while thus connected* and used, would be an illegal use of the tenement." Exceptions were overruled with the statement that "the instructions given to the jury were appropriate and sufficient."

In *Commonwealth* v. *Wallace*, 143 Mass., 88, an indictment for nuisance, it appeared that the defendant was licensed to sell liquor at No. 107 South Water Street; he also occupied the premises next adjoining. Evidence was offered that both premises were being used for liquor selling, and the defendant requested instructions that if the jury were satisfied that there was insufficient evidence of a nuisance in the adjoining premises, then all evidence regarding the use of these

adjoining premises must be disregarded in passing on the question of whether the defendant was conducting a nuisance at No. 107 by transgressing the terms of his license. The judge refused so to instruct, and exceptions were overruled, the court saying: "The situation of the premises No. 107 South Water Street and of the premises next south of those may have been such in reference to each other that the use made of the latter by the defendant was properly some evidence that the former was kept by him for the illegal sale of intoxicating liquors."

In *Commonwealth* v. *Buckley*, 147 Mass., 581, the defendant was convicted of a nuisance where it appeared among other facts that the defendant kept and sold liquors in a barroom on the ground floor and also had a dumb waiter connecting from it to a room on the second floor where he also sold liquor. The defendant requested an instruction that the two rooms were separate tenements, to only one of which could the evidence offered be applied, and that the jury must acquit the defendant unless the government should elect on which tenement to seek a conviction. The judge refused this instruction and ruled that the government must prove the single offense of keeping one tenement, but that such tenement might consist of one or several rooms, the jury having the right to decide which rooms made up the tenement. Exceptions were overruled, the court saying in part: "The only tenement . . . . was the hotel. . . . What rooms were included in that tenement was plainly a question of fact for the jury. There was evidence sufficient to warrant a finding that the room below was a part of it."

In *Commonwealth* v. *Clynes*, 150 Mass., 71, it appeared that two separated rooms were used in connection with the one purpose, and here, too, a conviction for nuisance was affirmed, exceptions being overruled. The defendant asked the judge to require the State to elect in which part of the building the tenement was, and to rule that two separate tenements were disclosed, but the judge refused. The court said in part: "The word 'tenement' in its modern use often signifies such part of a house as is separately occupied by a single person or family, in contradistinction to the whole house . . . . It may consist of a single room or of contiguous rooms, or of rooms upon different stories, if such rooms are controlled by a single person and are used in connection with each other."

In *Commonwealth* v. *Patterson*, 153 Mass., 5, separate buildings on the same lot were held part of the same "tenement" in a ·nuisance charge. The court said: "While it may have been divided into several tenements, it was not so divided, but was used as one tenement, and constituted one nuisance, the keeping of which was one offense."

A nearby room, which a person uses in connection with the business conducted by him in his regular place of business,. is a part of his "place of business," within the purview of the general prohibition statute. *Bashinski* v. *State*, 5 Georgia Appeals, 3, 62 S. E., 577; *Holland* v. *State*, Georgia Appeals, 72 S. E., 290; *Mundy* v. *State*, Georgia Appeals, 72 S. E., 300; *Flahine* v. *State*, Georgia Appeals, 73 S. E. 536.

We are of opinion that the instructions of the presiding Justice · were correct.

The entry will be

> *Exceptions overruled.*
> *Judgment for the State.*