THE STATE OF CONNECTICUT vs. LOUIS TORELLO ET ALS.

First Judicial District, Hartford, January Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Upon an appeal by the State for alleged error in directing a verdict for the accused in a criminal case, the sole issue is whether the evidence would have warranted a verdict other than that directed; and the sufficiency of the information cannot be considered in the determination of that issue.

A statute of a State in aid of the enforcement of the Eighteenth Amendment, may be more stringent in its provisions and penalties than the National Prohibition Act of Congress.

Section 8 of Chapter 291 of the Public Acts of this State, enacted in 1921, prohibits the transportation of "spirituous and intoxicating liquors" without a United States government permit. The accused was charged with a violation of this provision in transporting, for the purpose of "sale or exchange," certain "spirituous and intoxicating liquors, to wit, alcohol." It appeared upon the trial that the liquid transported by the accused was partially denatured alcohol, conforming to the formula 39 B, and the State offered evidence tending to prove that this liquid was 97.7 per cent alcohol and could be made fit for beverage purposes by the mere addition of water or other liquid, and further, that the alcohol therein could be readily extracted by a simple process of distillation and might then become a potable beverage when diluted with water or other liquid; and the State claimed that all such partially denatured alcohol was "intoxicating liquor" within the meaning of both the State and Federal Acts, but the trial court, upon the theory that there was a material variance between the proof and information, directed a verdict of not guilty, and the State appealed. Held:—

The State *v*. Torello.

1. That "spirituous and intoxicating liquors" included not only those specifically named or described in §1 of our Act, but, by its express terms, all those "which are declared by the laws of the United States to be intoxicating liquor," and therefore included alcohol.
2. That partially denatured alcohol containing one half of one per cent or more of alcohol by volume, which could be made fit for use for beverage purposes merely by adding water or other liquid, or by first extracting the alcohol and then diluting that, was "intoxicating liquor" within the meaning of our Act.
3. That the question whether the liquor transported by the accused was "fit for use for beverage purposes" or not, was one for the jury.
4. That the transportation without a permit from the United States government, of partially denatured alcohol of the character above described, was a violation of § 8 of our Act.

Section 6641 of the General Statutes, as amended by § 1 of Chapter 267 of the Public Acts of 1921, authorizes the trial court to direct a verdict of not guilty in a criminal case, if in its opinion the evidence is not sufficient to justify the finding of guilt beyond a reasonable doubt. *Held* that the performance of this duty called for the exercise of the highest qualities possessed by a trial judge, who should not direct a verdict of not guilty unless clearly of the opinion, upon the best consideration and judgment he can give to the matter, that under the law the evidence compels such a direction.

Argued January 8th—decided April 15th, 1924.

INFORMATION for transporting, for the purpose of sale or exchange, spirituous and intoxicating liquor, to wit, alcohol, and for aiding and assisting in such transportation, brought to the Superior Court in Hartford County and tried to the jury before *Kellogg, J.;* the trial court directed a verdict of not guilty to be rendered by the jury as to each of the accused, and from the judgment on such verdict the State, with the permission of the trial court, appealed. *Error and new trial ordered as to Torello; no error as to the other accused.*

*Reinhart L. Gideon,* Assistant State's Attorney, with whom, on the brief, was *Hugh M. Alcorn,* State's Attorney, for the appellant (the State).

*Reuben Taylor,* with whom, on the brief, was *William A. Reiner,* for the appellees Viglianti and Semprone (two of the accused).

*William J. McKenna,* with whom was *John M. Chapnick,* for the appellees Cobla and Lawlor (two of the accused).

*Max L. Goldenthal* and *Frank Covello,* with whom was *Francis A. Pallotti,* for the appellee Torello (one of the accused).

WHEELER, C. J. The information, in the first count, charges the accused Torello with transporting for purposes of sale or exchange, intoxicating liquor, to wit, alcohol; and in the second count, charges the other four accused with having aided and abetted in the commission of this crime. The crime charged in the first count is based upon § 8 of Chapter 291 of the Public Acts of 1921, which provides: "Every person who, for the purpose of sale or exchange, without a United States government permit, shall transport spirituous and intoxicating liquors by means of a vehicle or boat, shall be fined not more than two thousand dollars or imprisoned not more than two years or both, and every person accompanying any such vehicle or boat in which such spirituous and intoxicating liquors are so transported, without such permit, may be prosecuted and punished as an accessory." The crime charged in the second count is based upon General Statutes, § 6716, familiarly known as our accessory statute, and providing that the accessory "may be prosecuted and punished as if he were the principal offender."

The first count failed to allege one of the essential elements of the crime charged in § 8, that the accused transported this intoxicating liquor without a United States government permit. No demurrer was interposed to, nor has other attack been made upon, the sufficiency of this information. The sufficiency of the information cannot be considered upon the direction of

a verdict; the only issue to be determined is whether, upon the evidence, a verdict of guilty could be legally rendered. While, so far as we recall, this specific question has not been before us, it is necessarily involved in our rule authorizing the direction of a verdict. The reasons upon which this rule of law rests have been well stated in *State* v. *Gardner*, 174 Iowa, 748, 763, 156 N. W. 747: "Defendant asked the court to direct the jury to acquit on the ground that the indictment fails to charge the crime of lewdness. . . . In effect, the offered instruction attempts to operate as a demurrer to the indictment. It is not required that we pass upon whether the indictment is well criticised. The statute permits the points raised by the offer to be raised by demurrer (Code Sec. 5328) or by motion in arrest of judgment (Code Sec. 5426). Either method of attack being sustained, it is often possible to cure the defect by a new accusation. We think it fairly appears to be the legislative intent that such an attack upon the indictment shall not be made at a time when to sustain it must result in a final acquittal; that the defendant may not decline to use his right to demur nor anticipate his right to proceed by motion in arrest, and substitute for both an offered instruction which, if given, works an acquittal, thus obtaining a result which the employment of neither of the other methods would yield. Why provide for a demurrer, with power of resubmission, if same be sustained? Why provide for a second opportunity to demur by means of a motion in arrest if, at the pleasure of the defendant, neither may be used, and an acquittal be obtainable by attacking the indictment by means of an offered instruction? Who would ever use demurrer or motion in arrest if this be permissible? We can see no justification for the defendant's waiting until all the evidence has been taken on both sides to so present a demurrer to the indictment; no reason why

The State *v.* Torello.

he should not present it before the trial is actually begun; why, having passed this point, he should be allowed to anticipate the time, if ever it shall come, when he need present a motion in arrest of judgment. To make him proceed either at the one time or the other, rather than between the two, is not only orderly procedure, but absolutely fair to both the State and the defendant. It takes nothing justly due from defendant, and, as said, avoids the making said two statutes idle." See also *State* v. *Beach,* 147 Ind. 74, 77, 43 N. E. 949, 46 *id.* 145; *Gerke* v. *Fancher,* 158 Ill. 375, 382, 41 N. E. 982; *Romaine* v. *New York, N. H. & H. R. Co.,* 91 N. Y. App. Div. 1, 2, 86 N. Y. Supp. 248; 26 Ruling Case Law, § 81, p. 1078; 38 Cyc. 1565, 1575, 1579.

It is suggested that the statutory provision making an essential ingredient of the crime charged the possession of a United States permit, was the charge of an act which could not be complied with, since neither the National Prohibition Act, popularly known as the Volstead Act, nor the regulations thereunder, require such permit, and that therefore the term "without a United States permit," is to be construed as if it contained the clause: provided such permit has been required by the United States. Under § 2 of the Connecticut Act no one can transport intoxicating liquor except for the purposes specified in the Volstead Act, and then only upon a permit. Under § 3 and § 4 of Title II of that Act, partially denatured alcohol such as that in question, may be transported for nonbeverage purposes. The transportation may be subject to the requirement of procuring a permit, or the one transporting it may procure a permit by making application to the proper authority. Section 4 of Title II also provides that the selling of denatured alcohol for beverage purposes, or the sale under circumstances from which the seller might reasonably deduce the intention of the purchaser to use

such alcohol for such purpose, is within the penalty of the Act. Whether the possession or transportation of specially denatured alcohol which in fact is intoxicating liquor and designed for use as a beverage, is a crime under the Volstead Act and fairly within its terms, although not expressly made so, we are not now called upon to decide. The United States had the power to require a permit, and the transporter the privilege of securing a permit upon application. Our statute has made it a prerequisite that the transporter secure such permit. It is within his power to secure this, hence the criticism of our statute in this particular falls.

But whether or not the Volstead Act gave to the transporter this privilege of securing the permit, is of no consequence. The Eighteenth Amendment is a limitation, not a grant of power, and the domain of the police power remains in the States as it did before the Amendment, with the limitation upon the States that they cannot pass laws in conflict with the Amendment or the Volstead Act passed in its aid. We say in *State v. Ceriani*, 96 Conn. 130, 136, 113 Atl. 316: "Legislation by the State must support the primary purpose of the Amendment, and cannot be repugnant to the Act of Congress. . . . In the exercise of its police power the State may legislate for the enforcement of the Amendment by different means and methods which do tend to this end."

It cannot be contended that our statute, upon which this information is based, does not tend to support the enforcement of the Amendment. The Pennsylvania Act of 1887 prohibited every sale of spirituous liquor without a license, excepting certain designated sales. The Supreme Court of the United States held that this Act applied to sales solely for industrial purposes, and that it was primarily a prohibitory law and not in conflict with the Amendment or any provision of the Vol-

stead Act, but appropriate legislation which the State supplied in aid of the Eighteenth Amendment. *Vigliotti* v. *Pennsylvania*, 258 U. S. 403, 24 Sup. Ct. 330; *State* v. *Gauthier*, 121 Me. 522, 118 Atl. 380. It has been held in all the jurisdictions where the question has arisen, that the State statute may be more stringent in its provisions and penalties than the Volstead Act. *State* v. *Hosmer*, 144 Minn. 342, 175 N. W. 683; *Ex parte Polizzoto*, 188 Cal. 410, 205 Pac. 676; *O'Neil* v. *Demers*, 44 R. I. 504, 118 Atl. 677.

The jury might reasonably have found beyond a reasonable doubt that Torello had no permit to transport intoxicating liquors. The trial court directed a verdict of not guilty, as to Torello, because of a variance between the information and the proof, and as to the other accused because, in the opinion of the court, there was no sufficient evidence to justify a finding of guilty beyond a reasonable doubt. The authority of the court to direct this verdict is found in Chapter 267 of the Public Acts of 1921, § 1, which provides that "if in the opinion of the court the evidence is not sufficient to justify the finding of guilt beyond a reasonable doubt, then the court may direct the jury to find a verdict of not guilty; otherwise the court shall submit the facts to the jury without directing how to find their verdict." This statute changed our law in authorizing the direction of a verdict of not guilty. Before this statute our court had no such power. *State* v. *Fetterer*, 65 Conn. 287, 289, 32 Atl. 394; *State* v. *Main*, 69 Conn. 123, 134, 37 Atl. 80; *State* v. *Joseph*, 96 Conn. 637, 639, 115 Atl. 85. Since the enactment of this statute the court may direct a verdict of not guilty in a criminal case when the reasoning mind could not reasonably reach a conclusion other than that the evidence, under the law, is not sufficient to justify a finding of guilty beyond a reasonable doubt. The trial court should not direct a

verdict of not guilty unless the judge is clearly of the opinion, upon the best consideration and judgment he can give the matter, that under the law the evidence compels such a direction. The performance of this duty is of deep significance to the accused and to the State alike, and calls for the highest qualities the trial judge possesses.

The State's evidence against the accused, other than Torello, was circumstantial in character. We have studied and reflected upon this evidence in connection with the claims and arguments of the State's Attorney, and reached the clear conclusion that the trial court was justified in directing a verdict of not guilty as to the accused other than Torello. As to Torello, the court did not direct a verdict because the evidence was not sufficient to justify a finding of guilt beyond a reasonable doubt, but upon the ground that there was a complete variance between the proof and the information. We think the court was wrong upon the ground upon which it placed its direction of the verdict, and that neither upon the additional ground of lack of proof which counsel for the accused presents, nor upon any other ground, can the direction be supported.

The information, as we have seen, charges Torello with the transportation for the purposes of sale of certain spirituous and intoxicating liquors, to wit, alcohol. In *State* v. *Brown*, 51 Conn. 1, the complaint charged a sale of spirituous liquors, to wit, one half gallon of beer. We held this charge to be "the sale of that kind of beer which comes within the description of 'intoxicating liquor.'" This authority is conclusive that the information in the instant case is to be construed as charging the transportation of any kind of alcohol which comes within the description of spirituous and intoxicating liquor. Our inquiry, then, is as to whether the liquid in these barrels in the instant case

was a kind of alcohol which comes within the description of spirituous and intoxicating liquor. Section 1 of Chapter 291 of the Public Acts of 1921, gives us this definition: "The term 'spirituous and intoxicating liquors' shall be held to include all spirituous and intoxicating liquors, all mixed liquors, all mixed liquor of which a part is spirituous and intoxicating, all distilled spirits, all Jamaica ginger, all wines, ale and porter, all beer manufactured from hops and malt or from hops and barley, which are declared by the laws of the United States to be intoxicating liquor," etc. The last clause in this section refers not alone to beer, which immediately precedes it, but to all classes of spirituous and intoxicating liquors which are specified in that part of the section preceding this clause. This is clear from the context, and from the language "which are declared," which obviously refers to the several classes of liquid specified in all of the section preceding this clause. By reference, this clause incorporates into this section the definition of intoxicating liquor in § 1 of Title II of the Volstead Act. "The word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, . . . and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever named called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes." 41 U. S. Statutes at Large, p. 307. By the Federal statute any liquid which contains one half of one per cent or more of alcohol by volume and is fit for beverage purposes, falls within the term "intoxicating liquor."

The accused Torello, when apprehended in Suffield, was admittedly transporting eight barrels of liquid upon the highway. The State offered evidence to prove, and the jury might have found, that Torello had been

hired by Dominick in New Haven to transport on the day following from New Haven to Springfield, Massachusetts, a load of alcohol, and had been instructed by Dominick that before he reached Springfield he would meet some men who would wave to him and he should follow them. When Torello started with the load, the top and sides of the truck were covered with canvas and in the rear were twenty crates of green peppers in two rows piled one on top of the other, effectually concealing the eight barrels of partially denatured alcohol placed in front of the crates of green peppers, from any one looking at the wagon from the highway. Torello had no permit from the United States to transport intoxicating liquor. The partially denatured alcohol in these barrels was partially denatured alcohol conforming to the United States government formula 39 B, which is made up of 100 gallons of alcohol and $2\frac{1}{2}$ gallons of diethyphthalate and a trace of benzol. The inscriptions on the barrels, together with the serial numbers as required by the United States, had been scraped off on some of the barrels. The containers of specially denatured alcohol were always marked serially, and could not be obtained without the special permit and bond given to the United States government. The jury might also have found beyond a reasonable doubt that Torello was transporting for purposes of sale these barrels, and if they found that they contained intoxicating liquor, that the transportation was with the illegal intention of violating § 8 of our law. The liquid in the barrels analyzed 90.32 per cent alcohol, by volume, and 2.3 per cent of diethylphthalate, with a trace of benzol. (The discrepancy may be accounted for by evaporation or other causes.) All of these ingredients were alcohol and partook of an alcoholic nature. The purpose of the United States government in partially denaturing alcohol, is to

render it partially unfit for use for beverage purposes. Unquestionably this liquid in these barrels exceeds the alcoholic requirement to make it intoxicating within the definition of the Federal statute. Whether the partially denatured alcohol of the proof is a variance from the alcohol of a kind fit for beverage purposes as alleged in the information, depends upon whether the partially denatured alcohol contained in these barrels is fit for use as a beverage, within the meaning of the Federal definition of "intoxicating liquor." Had the contents of the barrels been pure alcohol, it would have been judicially recognized as an intoxicating liquor. *Marks* v. *State,* 159 Ala. 71, 48 So. 864, 868; *Cureton* v. *State,* 135 Ga. 660, 70 S. E. 302, 303; *State* v. *Wallace,* 121 Me. 83, 115 Atl. 609; *Maresca* v. *United States,* 277 Fed. Rep. 727, 740. But pure alcohol cannot be drunk as a beverage until reduced by water or other liquid. So the contents of these barrels, the State's witnesses testify, could not be drunk as a beverage until reduced in strength by the addition of water or other liquid. Three competent witnesses testified in behalf of the State that this liquid in its original condition was fit for use as a beverage when sufficiently reduced by water or other liquid, and could be made by rectification a palatable, intoxicating liquor beverage. The accused contradicted this evidence by the testimony of three competent witnesses. The determination of the issue of whether the liquid was fit for beverage purposes was for the jury. In a civil case the court could not take such a case from the jury; neither can it direct a verdict of not guilty in a criminal case when the State has introduced competent testimony in support of its charge and the defense has likewise introduced competent evidence contradicting this. When the conclusion is one dependent upon how conflicting testimony shall be resolved, the trial court should ordinarily leave the

case to the jury. The case ought to be a plain one to justify the direction of a verdict of not guilty; one concerning which reasoning minds could not reasonably differ. It is apparent that the trial court could not have directed a verdict against Torello unless it had been of the opinion that there was a variance between the proof and the information. There was, as we have seen, no variance between information and proof, and the case against Torello should have been submitted to the jury.

We know of no case directly in point under the Volstead Act, but several cases under prohibition laws or liquor laws raising practically the same question have reached the conclusion we reach. In *Schraeder* v. *Sears*, 192 Iowa, 604, 606, 185 N. W. 110, the court held: "If a liquor contains any per cent of alcohol and is used or is capable of being used as a beverage it is within the purview of the prohibition and is under the ban of the law. . . . Under such circumstances the fact that other ingredients are mixed or compounded in said liquor is wholly immaterial. If, however, intoxicating liquor is so compounded with other substances or ingredients as to lose its character as an intoxicating liquor, and is therefore no longer capable for use as a beverage, then the sale thereof does not fall within the prohibition." In *Henitz* v. *LePage*, 100 Me. 542, 545, 62 Atl. 605, it is said: "Any liquor containing alcohol, which is based on such other ingredients or by reason of the absence of certain ingredients that it may be drunk by an ordinary person as a beverage and in such quantities as to produce intoxication, is intoxicating liquor. If its composition is such that it is practicable to commonly and ordinarily drink it as a beverage and to drink it in such quantities as to produce intoxication, then it is intoxicating liquor." See also *Commonwealth* v. *Lanides*, 239 Mass. 103, 131 N. E. 302.

The State makes a further contention, which, if sound, is of very great practical importance in the enforcement of the Volstead Act and of our statute in its aid. It claims that specially denatured alcohol of this formula, whether susceptible or not of being used for beverage purposes in its then condition, is in fact and law "alcohol" and fit for beverage purposes within the meaning of the Volstead Act. The jury might readily have found that by a simple process of distillation, capable of being effected in the ordinary still and by the ordinary person, the ingredients of specially denatured alcohol of this formula can be separated, producing 2.3 per cent diethylphthalate, a trace of benzol, and the remainder of about 97.7 per cent of pure grain alcohol. It needs neither testimony nor argument to enable a court to see that specially denatured alcohol of this formula could be lawfully manufactured and sold, either within or without the State, to illegal vendors of intoxicating beverages within the State and by them subjected to this simple process of distillation, and the resultant obtained of 97.7 per cent pure grain alcohol, which is the base of all alcoholic beverages used in the illegal manufacture or vending of intoxicating beverages. We see no difference in the result obtained between the process of diluting grain alcohol to make it fit for beverage purposes, and the process of making the liquid fit for beverage purposes by first distilling it to separate the grain alcohol and then diluting that. The one requires two processes, the other one. Any other holding would lead to the constant abuse in the use of partially denatured alcohol, manufactured for industry, but used in violation of all Federal and State laws in aid of the Eighteenth Amendment. It would be an encouragement to law breaking of every kind and add greatly to the difficulties of the law-enforcing machinery of Nation and State. Unless a Federal

statute explicitly required us to reach that construction, we should be unable to conclude that Congress intended to say that specially denatured alcohol which by simple process of distillation could have its component ingredients separated, giving 97.7 per cent pure alcohol, was not to be included in its definition of intoxicating liquor, when it was intended for use as a beverage and not in industry; *United States* v. *Dodson*, 268 Fed. Rep. 397, 399; and that the criminally inclined could bring into a State, or manufacture within it, specially denatured alcohol of this proof which they purposed using in the illegal traffic in intoxicating liquor, and that the law was remediless and the law-enforcing machinery helpless to stop the traffic while the liquid remained in the partially denatured state. It would indeed be a reproach to the law if this were so. As we construe our own Act it leads to no such unfortunate conclusion. Our Act penalizes the transportation for purposes of sale of "intoxicating liquor." The jury might have found that the evidence showed beyond a reasonable doubt that Torello transported these eight barrels of specially denatured alcohol, which was in fact and law intoxicating liquor fit for beverage purposes and alcohol, since by a process of distillation the grain alcohol could have been separated and the resultant by dilution made fit for beverage purposes, and transported them without a United States government permit, in violation of § 8 of Chapter 291 of the Public Acts of 1921. Under proper instruction the final issue in the case against Torello was one of fact for the jury.

There is error and a new trial is ordered as to Torello.

There is no error as to the other accused.

In this opinion CURTIS, KEELER and MALTBIE, Js., concurred.

The State *v.* Torello.

BEACH, J. (dissenting). It is of course true that a mere amendable defect in the information will not justify a directed verdict of not guilty. That is not this case. The only seriously debatable question before us is whether the evidence would support a verdict of guilty against Torello, in view of the undisputed fact that, under the Volstead Act and the Federal regulations, the transportation of the alcohol in question was with the authoritative permission of the United States government.

That fact raises the question on which I differ: whether § 8 of Chapter 291 of the Public Acts of 1921 puts upon the transportation of alcohol in this State a restriction not imposed by the United States. I think not. The title and language of our statute show that it was passed in aid of the Eighteenth Amendment, and of the Volstead Act, and with a view to the existence of Federal regulations for the transportation of alcohol. These regulations permit the transportation of certain specified denatured and partially denatured kinds of alcohol, including alcohol conforming to formula 39 B, without any special authorization for the particular case. For the transportation of alcohol, not partially or wholly denatured in accordance with authorized formulas, a special permit is required in each case. It is an essential element of the offense described in § 8 that the transportation should be "without a United States government permit." Standing alone, the word "permit" might mean either a permission or the written evidence of a permission. When preceded by the indefinite article, it literally includes any authoritative permission.

No doubt Connecticut might by statute have declared a stricter prohibition upon the local transportation of alcohol than that imposed by the United States. It has not, however, seen fit to express any independent

policy of its own. The only policy declared is the policy of the Federal government. The only prohibition expressed is that alcohol shall not be transported without a Federal permit. That being so, the form of the permit, whether issued generally, or specially in each case; whether evidenced by a regulation applicable to all alcohol conforming to formula 39 B, or by separate written permit, would seem to be necessarily and intentionally left to the determination of the Federal authorities. It may be that the Federal regulation permitting the transportation of alcohol conforming to formula 39 B, without a license specially issued in each case, is inadequate to control the mischief disclosed by the evidence. Nevertheless the statute declared on is a penal statute and must be construed accordingly. It may also be that Torello was carrying out a conspiracy to violate other provisions of the Volstead Act, but with that offense he is not charged.

For the reasons indicated I am of opinion that the accused Torello could not lawfully have been found guilty as charged, after it appeared as an undisputed fact that the transportation in question was with the authoritative permission of the United States government; and, for this reason, that the trial court did not err in directing a verdict of not guilty.