TOWN OF JERICHO *v.* TOWN OF HUNTINGTON.

October Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 22, 1906.

*Towns—Support of Paupers—Residence—Evidence—Intention—Declaration of Pauper—Res Gestae—Offer of Evidence—Not Sufficiently Specific.*

In an action by one town against another to recover for expenditures in the support of a pauper, where plaintiff's evidence tended to show that the pauper with his family moved into the defendant town at a certain time, and that, in arranging for that removal, the pauper went there in advance to engage board with plaintiff's witness, it was proper to allow that witness to testify to declarations of the pauper, connected with the transaction of engaging board, evincing an intention to abandon his former residence and to reside thereafter in the defendant town.

It appearing that after the pauper had moved into the defendant town, he and his family were for a time at the home of H. in a third town, and that the character of that stay was in issue, plaintiff's evidence tending to show that it was temporary, and defendant's evidence tending to show the contrary, but the pauper not having testified, defendant's offered evidence that after the pauper returned to the defendant town, and before he went to the

plaintiff town, he said that he could not get along with H. and there-
fore threw up his contract under which he had gone to H.'s "to
reside," was properly excluded.

Defendant's offered evidence that, shortly before the pauper went to
H's, he was told that H. "wanted a man to go onto his place to
stay for a year to cut lumber or wood at the halves and draw it
away, and live with the old man and take care of him," had no
tendency to show what the arrangement between the pauper and
H. actually was, and was properly excluded.

Since the evidence on each side tended to show that the pauper was
at H's, and was at work there, defendant's offer to show merely
what the pauper was doing there two or three days after he was
told that H. needed a man, was properly excluded as immaterial.

If defendant desired to show that the pauper was doing work at H's
which substantiated defendant's claim as to the arrangement under
which he was there, the offer should have been specific enough to
make the relevancy of the offered evidence apparent to the Court.

ASSUMPSIT, under V. S. 3171, to recover for expendi-
tures for the support of a pauper. Plea, the general issue.
Trial by jury at the March Term, 1906, Chittenden County,
*Miles,* J., presiding. Verdict and judgment for the plaintiff.
The defendant excepted.

The testimony of LaFlash, referred to in the opinion,
was as follows:

"Q.  When he came up there and this board was engaged;
—if he said anything about his purpose in coming there,—
whether it was for a permanent stay or for visiting,—what
did he say the purpose was, if anything?

A.  He said he didn't want to stay there because he
wasn't getting big enough wages so he come to Huntington
and hired out to George Baker. Then he stopped and hired
his board there to my place.

Q.  Did they go back to Williston to live and reside?

A.  No, sir."

*V. A. Bullard* for the defendant.

Defendant's offered evidence as to what the pauper told O'Brien about why he left Harvey's, should have been admitted. *Derby* v. *Salem,* 30 Vt. 722.

*L. F. Wilbur* and *C. S. Palmer* for the plaintiff.

It is well settled that the declarations of a person when made accompanying the act and in connection with the act which becomes a controverted matter on trial of a case, may be proved as a part of the *res gestae.*   1 Greenl. Ev., §108; *Elkins* v. *Hamilton,* 20 Vt. 627; *Thorndike* v. *City of Boston,* 1 Met. 249; *Etna* v. *Brewer,* 78 Me. 377.

What a pauper says after he has come to reside in a town, or after he has left one town and gone to live in another, cannot be admitted as a part of *res gestae,* because the declarations have reference to acts already transpired and could not add force or give character to a transaction which was before complete.   *Salem* v. *Inhabitants of Lynn,* 13 Met. 544; *Corinth* v. *Lincoln,* 34 Me. 310; *Noyes* v. *Ward,* 19 Conn. 250; *Law* v. *Fairfield,* 46 Vt. 425; *Davis* v. *Fuller,* 12 Vt. 178; *Elkins* v. *Hamilton,* 20 Vt. 627; *St. Johnsbury* v. *Waterford,* 15 Vt. 692.

HASELTON, J.   This was an action under the statute to recover for expenditures in the support of one George La-Tulippe, a pauper.   Trial by jury was had, and the verdict and judgment were for the plaintiff.   It was conceded that the verdict and judgment were right provided the requisite three years' continuous residence of LaTulippe had been in the defendant town.   The exceptions taken and relied on were to the admission and rejection of evidence.   The evidence on the

part of the plaintiff tended to show that LaTulippe with his family removed from Williston to Huntington in the fall of 1897, and that in arranging for the removal LaTulippe went beforehand to the house of John LaFlash in Huntington and engaged board.   Under objection and exception LaFlash was allowed to testify to declarations of LaTulippe, connected with the transaction of arranging for board, evincing an intention to reside in Huntington and no longer in Williston.   These declarations of LaTulippe must be considered to have accompanied the act of removing, and as they characterized the act they were admissible.

It appeared that after LaTulippe removed to Huntington, he and his wife and children were for a time at the home of one Harvey in Hinesburgh.   The evidence on the part of the plaintiff tended to show that the time was about one week, and that they were there temporarily helping Harvey, during a sickness, to do chores and other work, with the intention of returning as they did to Huntington.

The evidence on the part of the defendant tended to show that LaTulippe was in Hinesburgh about two weeks, that he went there to reside, and was residing there under an agreement by which he was to carry on Harvey's farm for a year, board and care for Harvey, who was an old man, and cut and draw wood on shares from the farm to the market.   The character of LaTulippe's stay in Hinesburgh being in dispute, the defendant offered to show that at some time after he had gone back to Huntington and before he went to the plaintiff town, LaTulippe told one O'Brien that he left Harvey's because of a misunderstanding; "that he couldn't get along with the old man and therefore threw up the contract under which he had gone to Harvey's to reside."   Evidence under the offer was excluded, and its exclusion was proper.   The offered

evidence accompanied and characterized no act, and was in no sense any part of any *res gestae*.   It was not receivable under the rule relating to the admissions of parties, for LaTulippe was not a party.   It was not admissible as impeaching evidence, for LaTulippe was not a witness, and if he had been, a foundation must have been laid for such evidence.

The defendant called one Michael Bradley and offered to show by him that a day or two before LaTulippe went to Harvey's, Bradley called his attention to the fact that Harvey "wanted a man to go onto his place to stay for a year to cut lumber or wood at the halves and draw it away and live with the old man and take care of him."   This evidence, as the court held, was inadmissible.   It was no evidence tending to show what the arrangement between LaTulippe and Harvey actually was.   A party's claim as to what a contract was cannot be supported by such evidence.   The offered evidence did not tend to show why LaTulippe went to Harvey's, since for anything that appears, the conversation may well have been had after Bradley was informed that LaTulippe was going to Harvey's for some purpose.   There was a further offer to show that two or three days after this conversation Bradley saw LaTulippe at Harvey's and, in the language of the offer, "to show what he saw LaTulippe doing there," meaning, of course, at that time.   The evidence thus further offered was excluded, and in its exclusion there was no error.   It would have been immaterial to show that Bradley saw LaTulippe at Harvey's, for the evidence on both sides tended to show that he was there, and it would have been immaterial to show that Bradley saw LaTulippe doing something while there, since the evidence on both sides tended to show that he was there at work.   If the defendant desired to show that his witness saw LaTulippe doing work at Harvey's that made in

favor of the defendant's claim as to the arrangement under which LaTulippe was there, the offer should have been specific enough to make the relevancy of the offered evidence apparent to the court.

*Judgment affirmed.*