IDA HURVITZ *vs.* HARRY HURVITZ.

FEBRUARY 2, 1923.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Divorce. Dismissal of Petition. Allowances for Support.*

After a decision in favor of a petitioner for divorce, on exceptions of respondent the Supreme Court ordered the petition dismissed. After the filing of the petition the Superior Court had made an allowance to petitioner for her support during the pendency of the case, a portion of which was in arrears at the time of the filing of the rescript of the Supreme Court.

The decree in favor of the petitioner also ordered the respondent to pay her a stated sum per week for the support of herself and child:—

*Held,* that while with the dismissal of the petition the interlocutory decree of the Superior Court became eliminated in its entirety, still the rights of the petitioner under the order for the allowance were not affected as to anything due her up to the date of the filing of the rescript.

(2) *Divorce. Allowances for Support. Judgments.*

As under Gen. Laws, cap. 247, § 14, allowances for support are "so far regarded as a judgment for debt that suits may be brought or executions may issue thereon for amounts due and unpaid," it is immaterial whether proceedings to collect the same are commenced before or after the dismissal of the petition.

DIVORCE. Heard on motion of petitioner to delay order dismissing petition and motion denied.

VINCENT, J. On September 28, 1921, the petitioner filed her petition for divorce in the Superior Court and after a hearing thereon a decision was rendered in her favor.

The respondent then brought the case to this court upon his bill of exceptions. By an opinion filed December 22, 1922, this court held that the charges in the petition had not been sustained and the petitioner was afforded an opportunity to appear and show cause, if any she had, why an order should not be made remitting the case to the Superior Court with direction to dismiss the petition. The petitioner duly appeared by counsel, was heard, and, having failed to show cause, this court by its rescript filed January 12, 1923, ordered that the case be remitted to the Superior Court with direction to dismiss the petition.

The petitioner having filed her petition for divorce also, upon the same day, filed a petition for an allowance for her support and maintenance during the pendency of the case and, after a hearing upon the same, the Superior Court on October 1, 1921, ordered the respondent to pay to the petitioner the sum of five dollars per week.

By the interlocutory decree of the Superior Court, entered January 16, 1922, it was ordered that a decision be entered for the petitioner upon her petition for divorce; that the custody of the child be awarded to her; and that the respondent pay to the petitioner the sum of ten dollars a week, beginning January 21, 1922, for their support.

Following this decree the respondent came to this court by bill of exceptions. These exceptions covered the entry of a decision for the petitioner upon the grounds of extreme cruelty and neglect to provide, the award to her of the custody of the child, and the order requiring the respondent to pay ten dollars per week for their support.

We think that with the dismissal of the petition the decree of the Superior Court of January 16, 1922, becomes eliminated in its entirety and need not be further considered.

The previous order of the Superior Court of October 1, 1921, which provided for the payment of five dollars per week for the support of the petitioner during the pendency of the petition, remains in force. The respondent having failed to keep up his payments under this order, the same were collected from him, on two occasions, by means of executions issued by the Superior Court under the provisions of Chapter 247, Section 14 of the General Laws, of 1909.

The petitioner now claims that the respondent is still in arrears and that she fears the dismissal of her petition, in accordance with the direction of this court, will debar her from any further proceedings which she might institute for the purpose of collecting the balance due; and she has accordingly filed a motion asking that the direction to the Superior Court to dismiss the petition be held in abeyance until she can take such proceedings in that court as may be necessary to compel the respondent to comply with the order now in force providing for the payment of five dollars per week.

(1) We do not think that the dismissal of the petition will in any way affect the right of the petitioner to recover whatever may be found to be due to her under the order of the Superior Court entered October 1, 1921, and accruing between that date and the filing of the rescript of this court on January 12, 1923, ordering the petition dismissed.

We have fixed January 12, 1923, as terminating the responsibility of the respondent for the payment of five dollars per week for the reason that any delay in the dismissal of the petition, after that date, must be attributed to the petitioner, she having caused such further delay by her motion which is now before us.

(2) The section of the statute above cited provides that such allowances are "so far regarded as a judgment for debt that suits may be brought or executions may issue thereon for amounts due and unpaid." Being given the force of a judgment, it is immaterial whether proceedings to collect the same are commenced before or after the dismissal of the

petition. It seems to us that that question is fully covered in the opinion of this court in *Grattage* v. *Superior Court*, 42 R. I. 546.

At the hearing it was asserted by counsel that, in making up the amount for which execution had been issued, the weekly allowance for some portion of the time had been erroneously computed at ten dollars per week instead of five.

If that should prove to be so, the Superior Court, in ascertaining the amount now due the petitioner, should deduct thereform such sums as the respondent has paid in excess of five dollars per week.

We do not see that suspending the entry of a decree in the Superior Court dismissing the petition would be of any advantage to the petitioner and her motion is denied and dismissed.

The case is remitted to the Superior Court for the dismissal of the petition in accordance with our rescript of January 12, 1923.

*Philip C. Joslin, Ira Marcus,* for petitioner.
*Bellin & Bellin, James B. Littlefield,* for respondent.

---

WILLIAM F. O'NEIL *vs.* ARTHUR DEMERS.
WILLIAM F. O'NEIL *vs.* AUGUST DUNN.
WILLIAM F. O'NEIL *vs.* JOSEPH B. BLACK.
WILLIAM F. O'NEIL *vs.* JOHN E. WARD.

NOVEMBER 6, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

Pub. Laws, cap. 2231, January session, 1922, "An act to enforce the prohibition of intoxicating liquors for beverage purposes" is not obnoxious to Art. I. sec. 10, Cons. R. I., as depriving an accused of life, liberty, or property without due process of law; nor to Cons. U. S. sec. 1 of Art. XIV of amendments so far as the provisions of said chapter affect certain respondents charged in criminal complaints with a violation of said chapter.

*(2) Constitutional Question. Jurisdiction.*

While a case is before the court on a constitutional question certified from a district court on a criminal complaint it is not improper to entertain a

motion to dismiss the complaint on the ground that the district court lacked jurisdiction, since such question may be raised at any time before judgment in a cause.

(3)  *Intoxicating Liquors.   Conflict of Laws.   Enforcement Acts.*

Pub. Laws, 1922, cap. 2231, the "Sherwood Act" is not in conflict with the Volstead Act, in that the former act prohibits the manufacture in this State of dealcoholized liquors having an alcoholic content of less than one-half of one per centum when the process of its manufacture is completed, but on the contrary there is the manifest intention on the part of the legislature to make the provisions of the State enforcement act conform to those of the Federal Act.

(4)  *Public Acts.   Presumptions of Validity.   Evidence.*

In considering the validity of an enrolled act of the legislature, depending for its proper determination upon the nature of the action of the houses of the general assembly the court may receive the evidence furnished by the public records embodied in the legislative journals, and the validity of an act of the legislature will not be impeached where such journals show nothing to overcome the presumption of the validity of the act.

(5)  *Public Acts.   Validity of Public Acts.   Presumptions.*

In considering the validity of an act of the legislature the court will not assume that transactions of the legislature were otherwise than the journal states nor that the members did not appreciate the nature of the action of that body.

SWEETLAND, C. J.   Each of the above entitled causes is a criminal complaint preferred in the District Court of the Sixth Judicial District by the complainant as Deputy Chief of Police of the city of Providence charging the respondent with a violation of Chapter 2231, Public Laws, 1922, the same being "An act to enforce the prohibition of intoxicating liquors for beverage purposes," sometimes called the "Sherwood Act."

In said district court in each complaint the respondent by his plea in abatement brought in question upon the record the constitutionality of said Chapter 2231; and Howard B. Gorham, Esq., Associate Justice of said court, in conformity with statutory direction, has certified the constitutional questions raised to this court for its decision.   The question certified is the same in each complaint and is as follows: "That Chapter 2231 of the Public Laws of the State of Rhode Island, passed at the January session of the General

Assembly, A. D. 1922, is void and unconstitutional because it is in violation of Section 10 of Article I of the Constitution of the State of Rhode Island and of Section I of Article XIV of the Amendments to the Constitution of the United States of America."

Article I, Section 10 of the Constitution of Rhode Island is as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty or property, unless by the judgment of his peers, or the law of the land." Section 1 of Article XIV of the Amendments to the Constitution of the United States is as follows: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

After hearing the parties and receiving their briefs and supplemental briefs, Albert A. Baker, Esq., William H. Spicer, Esq., and Walter I. Sundlun, Esq., members of the bar, stated to the court that they represented a number of respondents, in pending criminal proceedings, whose interests would be affected by our determination in the matter now under consideration, and requested permission to file a brief in support of the contention of the respondents here. Such petition was granted and they have filed a brief as *amici curiae* which has been considered by the court in connection with the other briefs filed.

The questions certified treat said Chapter 2231 as duly enacted by the General Assembly and approved by the governor in accordance with the formalities prescribed by law, and only bring in question the constitutionality of its provisions. The provisions of said chapter are clearly not repugnant to nor in violation of said Section 10, Article I of the Constitution of Rhode Island or Section 1, Article XIV of Amendments to the Federal Constitution, as to any matter involved in either of said complaints. No claim of that nature has been made to us by either of these respondents, nor does such repugnance or violation appear to us upon an examination and consideration of said chapter. None of its provisions, which is pertinent to this complaint, attempts to authorize an invasion of the rights secured to an accused in a criminal prosecution by the provisions of the said section of the Rhode Island constitution; nor does any of its provisions tend to abridge the privileges or immunities of citizens of the United States, deprive any person of life, liberty or property without due process of law nor deny to any person within this State the equal protection of the laws contrary to the prohibition contained in said section of the United States constitution.

Our decision is that, in as far as the provisions of said Chapter 2231 affect the respondents under these complaints, such provisions are not in violation of the section of the constitution of this State nor of the section of the federal constitution relied upon in the question certified.

While said constitutional questions were pending in this court the respondent in each of said complaints moved to dismiss the complaint on the ground that said district court was without jurisdiction in the premises for the following reasons: (1) that said Chapter 2231 is in conflict with the provisions of the national prohibition act, commonly called the Volstead act, and (2) that said Chapter 2231 is inoperative and void because it was not enacted by the General Assembly in accordance with the requirements of the constitution of the State. Question arises as to the propriety

of entertaining the motion to dismiss a complaint, pending in a district court, when the only matter before us connected with such complaint is a constitutional question certified. We find authority for such action however in *Lace* v. *Smith*, 34 R. I. 1, in which case a constitutional question brought on the record in a bill in equity, pending in the Superior Court, was certified to this court for determination. During the pendency of the constitutional question here this court considered and passed upon a motion to dismiss said bill in equity in the Superior Court, which motion was based upon the ground that the Superior Court was without jurisdiction. The court based its action upon the broad ground that a question of jurisdiction may be raised at any stage of the proceedings in a cause before judgment, and said, "If the motion should be granted, the whole case including the constitutional questions raised therein, would terminate and cease to exist, therefore it becomes necessary to first inquire into the validity of the motion." We are the more inclined to be governed in this matter of procedure by the authority of *Lace* v. *Smith* because of the desirability of determining the questions involved at this time, and setting at rest the doubt that has been raised in the minds of the public as to the validity of this very important statute, for the violation of the provisions of which a large number of criminal prosecutions are now pending in the various courts of the State. In nearly if not all of which prosecutions the questions involved in this motion have been raised in one form or another.

As to the first ground of the motion to dismiss, *i. e.*, that the provisions of Chapter 2231 of the Public Laws conflict with those of the Volstead act, it is claimed by these respondents that in some respects the State law provides for a more stringent system of prohibition than the federal statute, and in that regard conflicts with such statute. It has been held by courts before which the question has been presented that the XVIII Amendment to the federal constitution does not take away the authority of a State, in the exercise of its

police power, to absolutely prohibit the manufacture and sale of intoxicating liquors within such State; and further that in the exercise by a State of the concurrent power to enforce the amendment by appropriate legislation, given by said amendment to congress and to the several states, it is not essential that the State legislation be identical with that of congress, but merely that it shall be appropriate to the purpose of enforcing the prohibition established by the article, with the proviso, that a state enforcement statute can not effectively authorize the doing of an act forbidden by the federal law.  The provisions of a state statute seeking to enforce the sweeping prohibition provided for in the first section of the XVIII Amendment will not be stricken down because such provisions appear to be more drastic than those of the Volstead act.  *Commonwealth* v. *Nickerson*, 236 Mass. 281; *Jones* v. *Cutting*, 130 N. E. 271; *Vigliotti* v. *Pennsylvania*, 42 Sup. Ct. Rep. 330.

(3)

It is unnecessary, however, in the matter before us to apply the principles enunciated in the cases just cited, as a comparison of the Sherwood and Volstead acts shows that, as to the matters contained in the claim of these respondents, there is no conflict between the two, either real or apparent. The respondents contend that the State act is repugnant to the provisions of Title II, Section 37 of the Volstead act. By Title II, Section 37 of that act a manufacturer may be permitted "to develop in the manufacture thereof by the usual methods of fermentation and fortification or otherwise a liquid such as beer, ale, porter or wine containing more than one-half of one per centum of alcohol by volume but before any such liquid is withdrawn from the factory or otherwise disposed of the alcoholic contents thereof shall under such rules and regulations as the commissioner may prescribe be reduced below such one-half of one per centum of alcohol."  The respondents urge that the Sherwood act conflicts with the provisions of said Title II, Section 37, because under Section 3 of the Sherwood act the manufacture and sale of intoxicating liquors for beverage purposes is absolutely prohibited.

It is conceded by the parties that in manufacturing beer, ale, porter, and similar liquors which are to have an alcoholic content of less than one-half of one per centum by volume there is necessarily developed, during the process of manufacture, as a result of fermentation, an alcoholic content in excess of such one-half of one per centum by volume; and that then the excess of alcohol must be eliminated by a process of dealcoholization. This is recognized in said Section 37 of the national act; and, as therein provided, under the permit of the commissioner of internal revenue such development of alcohol and its subsequent elimination may be carried on in the manufacture of dealcoholized fermented liquors.

Notwithstanding the provision for the absolute prohibition of the manufacture of intoxicating liquors which is contained in Section 3 of the State act, Section 4 of that act recognizes the right of a person having a permit from the United States Commissioner of Internal Revenue, in conformity with the National Prohibition act, to manufacture liquor in this State. This includes the right to develop, under permit from such commissioner, as a part of the process of manufacturing fermented liquors, a content of alcohol greater than one-half of one per centum by volume, provided such alcoholic content is subsequently reduced below one-half of one per centum by dealcoholization in accordance with Section 37 of the national act. Moreover while Section 3 of the Rhode Island act, in terms, absolutely prohibits the manufacture and sale of intoxicating liquors Section 1 of that act, in defining the meaning to be given to the phrase "intoxicating liquors," when used in the act, specifically provides that such definition shall not extend to dealcoholized beer, ale, porter or wine, nor to any beverage or liquid produced by the process by which beer, ale, porter or wine is produced, if it contains less than one-half of one per centum of alcohol by volume.

It thus appears that the State act does not prohibit the manufacture in this State of dealcoholized fermented liquors

which have an alcoholic content of less than one-half of one per centum when the process of its manufacture is completed; that the State act recognizes the right, under permit of the commissioner of internal revenue, to produce such liquors in accordance with the provisions of said Section 37 of the national act; and that in respect to the matter which the respondents urge that is no conflict between the state and national act but there is the manifest intention on the part of the General Assembly to make the provisions of the State enforcement act conform to those of the federal act.

(4)    The other ground of the respondents' motion to dismiss is that the State enforcement act never became a law because, although it was approved by the Governor, it was not passed by the General Assembly in accordance with Article IV, Section 2, of the Constitution of Rhode Island; which section provides that "The concurrence of the two houses shall be necessary to the enactment of laws."

In support of this claim the respondents state that in the senate a bill, conforming to said Chapter 2231 of the Public Laws save in some minor particulars, was reported by the committee on special legislation with recommendation of passage; that in the senate on motion of Senator Sherman an amendment was adopted adding to Section 3 a provision to the effect that the prohibition of that section did not extend to the manufacture of dealcoholized fermented liquors under a permit from the commissioner of internal revenue in accordance with Section 37 of the national prohibition act; that the Sherman amendment, so-called, was not incorporated in the body of the bill but was written upon a separate slip of paper; that when the bill was transmitted to the house of representatives the slip containing the Sherman amendment did not accompany it; that in the house of representatives the bill without the Sherman amendment was acted upon and with certain amendments upon minor matters, none of which related to the provisions contained in the Sherman amendment, was passed in concurrence; that the bill as acted upon by the house, together

with the house amendments, was transmitted to the senate and there passed in concurrence with the house amendments and transmitted to the Governor. From these facts the respondents urge that the house in passing the bill did not have before it the Sherman amendment and did not concur in the senate's action; that the senate when acting in concurrence with the house so acted on the assumption that the house had concurred in the Sherman amendment and that hence there was not the concurrence of the two houses necessary to the enactment of said bill as a law.

The question arises as to whether we should consider extrinsic evidence for the purpose of impeaching the validity of an act which has been duly enrolled and promulgated as law. In the early case of *State* v. *Septon*, 3 R. I. 119, this court declared that: "It is quite sufficient to establish the existence of a public law to find it on the records of the State. If the Courts go behind that, and declare a law void because the 'General Assembly did not conform to the directions of another law in passing it, they may also be called to decide on the legality of the organization of the two Houses of Assembly, in the same incidental manner." *In Field* v. *Clark*, 143 U. S. 649, the court approved the doctrine enunciated by the Supreme Court of New Jersey in *State* v. *Young*, 29 N. J. L. 39, that, upon grounds of public policy, the copy of a bill bearing the signatures of the presiding officers of the two houses of the legislature, and the approval of the governor, and found in the custody of the secretary of state, constituted conclusive proof of its enactment and contents and could not be contradicted by the legislative journals or in any other mode. Other state courts whose opinions are entitled to great weight have held that the presumption of validity arising from the due enrollment of legislative acts should not be overthrown by the consideration of extraneous evidence tending to impeach the validity of such acts. The weight of authority in the state courts, however, is opposed to that opinion, and after full consideration we are led to depart somewhat from the

principle of *State* v. *Septon*, 3 R. I. 119. Article IV, Section 8 of the State constitution provides that each house of the general assembly shall keep a journal of its proceedings. These journals constitute public records of the matters therein contained. In our opinion when a question arises, as in this case, regarding the validity of an enrolled act and depending for its proper determination upon the nature of the action of the houses of the general assembly, we may in the consideration of that question receive the evidence furnished by the public records embodied in the legislative journals. A copy, certified by the secretary of state, of the journals of the senate and the house of representatives relating to the action of those houses upon the bill now under consideration has been filed with us, and we have examined the same. From such examination it appears that the so-called Sherman amendment did not come before the house of representatives, but that the bill was there amended in minor particulars; and, in the form in which it is now enrolled, was passed by the house of representatives and duly transmitted to the senate. In the Journal of the Senate it appears that the bill as it passed the house with the house amendments was read and there passed in concurrence, and ordered transmitted to the Governor.

*Elmer S. Chace, City Solicitor. Henry C. Cram, Sigmund W. Fischer, Jr., Assistant City Solicitors,* for complainant.

*Rosenfeld & Hagan,* for defendants.

*Baker & Spicer, Walter I. Sundlun, amici curiae.*