STATE *v.* IRVING LUCIA.

October Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed November 4, 1931.

54

56

*Marcell Conway* for the respondent.

*C. O. Granai,* State's attorney, for the State.

MOULTON, J. The defendant is charged with the furnishing and possession of intoxicating liquor, in violation of section 4, No. 204, Acts of 1921. After a trial by jury in the Barre city court, the verdict was guilty, and the case is before us on his exceptions.

When the police officers entered the dwelling house of the respondent, under the authority of a search warrant, they discovered the respondent and Newton Dennis seated at a table in the kitchen. On the table was a glass pitcher with a little so-called "home brew" in it, and two empty glasses which had the appearance of having shortly before contained the same concoction. In a cupboard in respondent's bedroom they found 27 bottles of "home brew," with metal caps, which they seized and removed to police headquarters.

The defense was that the "home brew" was not intoxicating liquor, under the law, because it contained less than one-

half of one per cent. of alcohol by volume at sixty degrees Fahrenheit, at the time of seizure; and that the respondent's possession of it, even though intoxicating, was lawful because it was in his *bona fide* dwelling house.

The report of the chemical analysis of the contents of one of the bottles, made by the chemist of the State Department of Hygiene, nine days after the seizure, by which it appeared that the alcoholic content at the temperature above mentioned was 6.6 per cent. by volume, was offered in evidence by the State. In so doing the State's attorney referred to the chemist as one "who analyzed the liquor." To this statement the respondent excepted, the objection being the use of the word "liquor" instead of "liquid," and now contends that it had a tendency to influence the jury with respect to the alcoholic character of the fluid. It is doubtful whether the exception, as taken, was sufficiently explicit to apprize the trial court of this claim, but, at any rate, no prejudice appears. Previously during the trial the word "liquor" had been used in describing the subject of the seizure without objection being made. It is true that according to Mr. Webster, one meaning of "liquor" is "specifically alcoholic or spiritous fluid," but the same authority also gives the word another meaning as "any liquid substance." Without considering the lexicological exactitude of the expression, it is quite impossible to suppose that the jury could have been misled or influenced by it, and the exception is not sustained. The report of the analysis was received in evidence without further objection or exception.

■ Several exceptions were taken by respondent to the exclusion of certain questions asked during the cross-examination of two of the officers who conducted the search and were witnesses on behalf of the State. All these exceptions are substantially the same and may be considered together. Referring to the time that the officers entered the house, they were asked whether the respondent, or Dennis, or either of them showed signs of having been drinking intoxicating liquor. The argument is advanced that, since chemical analysis is not the exclusive method of ascertaining the intoxicating character of liquor and that this fact may be established by testimony of a general nature (*State* v. *Watson,* 99 Vt. 473, 477, 134 Atl. 585), it was competent to show that the drinking of this particular beverage did not have an intoxicating effect. But the issue here was

58

not whether the liquid would in point of fact produce intoxication, but whether it contained more than the statutory alcoholic content. The effect upon anyone of drinking any quantity of it was immaterial if this content was exceeded. .

Furthermore, the offers upon which this proposed evidence was predicated did not state the quantity supposed to have been consumed by the two persons. In the case of one witness the offer was to show "that the two parties that were sitting there at that time * * * * didn't show the effects of having been drinking intoxicating liquor," and in the other, "that these two friends .were sitting at the kitchen table and had drank a certain quantity of this so-called home brew; and that there was no evidence that they were affected or under the influence of this liquid." At the time of these exceptions no evidence had been introduced tending to show the amount which had been consumed by either, and, although later on both the respondent and Dennis testified that each drank 6 glasses of it, the offer was not renewed. When evidence is excluded the excepting party must show that in the then present aspect of the case it was admissible. *Foote* v. *Woodworth,* 66 Vt. 216, 221, 28 Atl. 1034; *State v. Lapan,* 101 Vt. 124, 132, 141 Atl. 686; *Ravine House Co.* v. *Bradstreet,* 102 Vt. 370, 375, 376, 148 Atl. 481. Taking the respondent's view of the admissibility of this evidence as sound, no error appears, because not only must an offer be specific enough to make the relevancy of the offered evidence apparent to the trial court (*Bancroft's Admx.* v. *Cote,* 90 Vt. 358, 361, 98 Atl. 915; *Moncion* v. *Bertrand,* 98 Vt. 332, 341, 127 Atl. 371; *Town of Jericho* v. *Town of Huntington,* 79 Vt. 329, 334, 65 Atl. 87), but to make the exclusion error it must appear affirmatively that at the time of the ruling the record of the trial court disclosed such facts as would make the evidence admissible, or that in connection with the offer there was also an offer to show such facts as would make it admissible. *Gregg* v. *Willis,* 71 Vt. 313, 316, 45 Atl. 229. The offer to show the drinking of a "certain quantity" was so indefinite as to make it quite within the discretion of the trial court to exclude it. *Merrihew's Admr.* v. *Goodspeed,* 102 Vt. 206, 212, 147 Atl. 346, 66 A. L. R. 1109.

At the close of the evidence the respondent moved for a directed verdict of not guilty, and excepted to the denial of it. The first ground was "that there was no evidence to show

that the respondent possessed or furnished any beverage containing more than one-half of one per cent. of alcohol by volume at 60 degrees Fahrenheit on the date charged in the complaint * * * * or any other date prior thereto.''

It is urged that, although the liquid showed an alcoholic content of 6.6 per cent., the analysis was not made until 9 days after the seizure and that this delay would, according to common knowledge, have a tendency to change the content, and that there was no evidence that, when analyzed, it was in the same condition as when seized. The fact that the bottle was carried by the State's attorney in his automobile from Barre to the laboratory at Burlington is also urged as a factor in the situation. But, assuming that these matters have the effect the respondent claims for them, we think that the extent, if any, to which they affected the weight to be given to the report of the analysis, was for the jury to say. There was, indeed, other evidence to be considered in connection with it. The respondent himself described the method by which he manufactured the ''home brew'' in question. He testified that he placed certain quantities of sugar, malt, and water, together with a yeast cake, in a washboiler, covered the mixture with a sheet of heavy cardboard and left it to ferment, ''to give it a chance to get good, taste better,'' following which he bottled it. The bottles were sealed with air tight metal caps. Altogether there was a question for the jury upon this issue, and the motion was properly denied upon this ground.

The other ground for the motion was ''that the mere possession of intoxicating liquor in one's dwelling house is not unlawful. That there was no evidence from which the jury could find that such possession was unlawful and for an unlawful purpose.''

By section 4, No. 204, Acts of 1921, it is provided that ''A person shall not * * * * furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented, except, however, liquor, preparations and compounds for non-beverage purposes and wine for sacramental purposes may be * * * * furnished and possessed, but only as provided by or under the laws of the United States.'' Section 1 declares that the act ''shall be deemed an exercise of the power granted by article 18

of the (amendments to the) Constitution of the United States, and the police power of the state for the protection of the public welfare, health, peace, safety and morals of the people of the state, and all of its provisions shall be liberally construed for the accomplishment of these purposes.''

By the federal prohibition act, commonly known as the Volstead Act, tit. 2 §33 (27 U. S. C. A. §50), it is provided that: ·''It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only.'' It is upon this statute that the respondent bases his claim to have a verdict directed in his favor; and therefore the question is: How far, if at all, it affects the provisions of section 4, No. 204, Acts 1921, above quoted, which absolutely prohibit the possession of intoxicating liquor in any place at all, with certain exceptions which are not material here, because there is no claim that the ''home brew'' was liquor for non-beverage purposes or wine for sacramental purposes.

The Eighteenth Amendment to the United States Constitution, by section 1 thereof, prohibits the manufacture, sale, transportation, importation or exportation of intoxicating liquor, and, by section 2, it is provided that ''The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation.''

It is said in *United States* v. *Lanza,* .260 U. S. 377, 381, 382, 67 L. ed. 314, 43 Sup. Ct. 141, 142, that ''To regard the amendment as the source of the power of the states to adopt and enforce prohibition measures is to take a partial and erroneous view of the matter. * * * * In effect the second section of the Eighteenth Amendment put an end to restrictions upon the state's power arising out of the federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the amendment took from the state all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. Such laws derive their force, as do all new ones not inconsistent with it, not from this amendment, but from power originally belonging to the states, preserved to them by the Tenth Amendment and now relieved from the restriction heretofore arising out of the federal Constitution.'' The adoption of the Eighteenth Amendment did not impair the right of a state, by the exercise of its police power,

to protect its citizens in its own way from the evil effects of intoxicating liquor, except that since such adoption it may not permit the sale, use, or possession of intoxicating liquor of a kind, or in a manner, prohibited by the laws of the United States. *Commonwealth* v. *Vigliotti,* 271 Pa. 10, 115 Atl. 20, 21, affirmed 258 U. S. 403, 408, 66 L. ed. 686, 42 Sup. Ct. 330, 331; *People* v. *Alfano,* 322 Ill. 384, 153 N. E. 729, 730; *O'Neil* v. *Demers,* 44 R. I. 504, 118 Atl. 677, 679; *State* v. *Torello,* 100 Conn. 637, 124 Atl. 375, 376; *State* v. *Ceriani,* 96 Conn. 130, 113 Atl. 316, 318; *Katz* v. *Eldridge,* 96 N. J. Law, 382, 118 Atl. 242, 244 (reversed upon another point, 98 N. J. Law, 125, 117 Atl. 841); *State* v. *Gauthier,* 121 Me. 522, 118 Atl. 380, 384, 26 A. L. R. 652. The second section of the amendment, providing for "concurrent power," expressly recognizes that a state may exercise its police power by appropriate legislation. *Vigliotti* v. *Commonwealth of Pennsylvania,* 258 U. S. 403, 408, 66 L. ed. 686, 42 Sup. Ct. 330, 331.

That the regulation of traffic in intoxicating liquor is a proper subject for the exercise of the police power, and not violative of the Fourteenth Amendment to the federal Constitution was decided in *Mugler* v. *Kansas,* 123 U. S. 623, 31 L. ed. 205, 209, 210, 8 Sup. Ct. 273. The right to possess intoxicating liquor for personal purposes is not one of those fundamental privileges of a citizen of the United States which no state may abridge. *Crane* v. *Campbell,* 245 U. S. 304, 308, 62 L. ed. 304, 309, 38 Sup. Ct. 98. The only requirement is that legislation upon the subject shall not defeat or thwart the prohibition contained in the Eighteenth Amendment, but shall operate to enforce it by appropriate means. *National Prohibition Cases,* 253 U. S. 350, 387, 64 L. ed. 946, 978, 40 Sup. Ct. 486, 588.

Subject to this proviso, a state enforcement act need not conform to the federal one, or be identical with it. It is not inappropriate merely because its provisions appear to be more drastic than those of the Volstead Act, whether in the conduct forbidden or in the penalties imposed. *O'Neil* v. *Demers* (R. I.), *supra; Commonwealth* v. *Alderman,* 275 Pa. 483, 119 Atl. 551, 554; *Katz* v. *Eldredge,* 98 N. J. Law, 125, 117 Atl. 841, 847. It is only where there is an actual repugnancy or an irreconcilable conflict so that the two cannot stand together that the act of Congress is to be held supreme. *State* v. *Gauthier,* 121 Me. 522, 118 Atl. 380, 382, 26 A. L. R. 652; *Commonwealth*

v. *Nickerson,* 236 Mass. 281, 128 N. E. 273, 279, 10 A. L. R. 1568. And see *In re Guerra,* 94 Vt. 1, 10, 110 Atl. 224, 10 A. L. R. 1560.

It is established beyond question that, because of the well-known noxious qualities of intoxicating liquor and the extraordinary evils shown by experience commonly to be consequent upon its use, a state may, in the exercise of the police power, enact a law that makes it unlawful to possess it without regard to time, place, or circumstance. *State* v. *Semeraro,* 99 Vt. 275, 279, 131 Atl. 798; *Crane* v. *Campbell, supra; Samuels* v. *McCurdy,* 267 U. S. 188, 194, 195, 69 L. ed. 568, 45 Sup. Ct. 264, 265, 37 A. L. R. 1378. This results from the principle that since the state has the power to prohibit the traffic in intoxicating liquor, it has the power to adopt any means reasonably adapted to make such prohibition effective, by which no constitutional right is violated. *People* v. *Alfano, supra,* 322 Ill. 384, 153 N. E., 729, 731; *Crane* v. *Campbell, supra.* Such legislation is merely an additional instrument which the state supplies in the effort to enforce the provisions of the Eighteenth Amendment. *Vigliotti* v. *Commonwealth of Pennsylvania, supra.*

A state enforcement act which makes the possession of intoxicating liquor illegal is perfectly consistent with the prohibition contained in the Eighteenth Amendment, and is ''appropriate legislation'' enacted under the ''concurrent power'' clause therein. *State* v. *Gauthier, supra; People* v. *Alfano, supra.* It is not an arbitrary or unreasonable provision, or without proper relation to the legitimate legislative purpose. *Crane* v. *Campbell, supra.* Neither is it repugnant to, or in conflict with, the provisions of the Volstead Act, because, while it forbids possession under circumstances wherein that act permits it, it does not prevent or thwart the purpose of the Amendment and of the Volstead Act to prohibit the manufacture, sale, transportation, exportation or importation of intoxicating liquor, but is rationally adapted to aid in the enforcement, as clearly appears from the decisions heretofore cited.

It is, therefore, no defense to a prosecution for the possession of intoxicating liquor for beverage purposes as forbidden by section 4, No. 204, Acts of 1921, to say that such possession was legal under the Volstead Act. In his reliance upon *State* v. *Semeraro, supra,* to support this contention, coun-

sel for· the respondent has misapprehended the point involved. In that case the respondent offered to show that the liquor was kept by him for non-beverage, or medicinal purposes, which so far as permitted by the Volstead Act is permitted also by section 4, No. 204, Acts of 1921. It appeared that the building in which it was kept was not occupied by respondent as his residence only but also for commercial purposes. It was held that the evidence was properly excluded because the offer did not include an offer to show that the respondent had a federal permit as required by the Volstead Act under such circumstances. Here, we are concerned, not with the provision of section 4, No. 204, Acts of 1921 which permits the possession of non-beverage liquor when the same is allowed under the Volstead Act, but with that other provision which absolutely prohibits the possession of liquor for beverage purposes.

The respondent also relies upon *Johnson* v. *State,* 81 Fla. 783, 89 So. 104, 107-109, as an authority in his favor. In that case it was held that a state statute which limited the amount of intoxicating liquor which could be lawfully possessed by one in his private dwelling was invalid so far as liquors legally acquired before the Eighteenth Amendment became effective were concerned, because the Volstead Act confers a privilege to possess liquor in a private dwelling, when lawfully acquired and not connected with an unlawful purpose, which was protected from abridgment by the Fourteenth Amendment, which guaranteed to everyone the equal protection of the law. Other Florida cases are to the same effect. See *Burrows* v. *Moran,* 81 Fla. 662, 89 So. 111, 113; *Hall* v. *Moran,* 81 Fla. 706, 89 So. 104; *Haile* v. *Gardner,* 82 Fla. 355, 91 So. 376, 379; *Spooner* v. *Curtis,* 85 Fla. 408, 96 So. 836. But without commenting upon the soundness of these decisions which appear to be contrary to the great weight of authority it is enough to say that they are not in point, because we have here no question involving liquor lawfully acquired before the Amendment went into effect, or indeed, lawfully acquired at all.

We hold, therefore, that the motion for a directed verdict of not guilty was properly overruled upon the second ground. It is not necessary to consider respondent's claim that if it were lawful for him to possess the liquor, he could lawfully furnish it.

■ ■ Four exceptions were taken to the argument of the State's attorney. The first was "to the remarks of the State's attorney regarding the disclosure law because it has no bearing in this case whatsoever." The second was "to the reference of the State's attorney that the liquid in question is beer." The third, "to the argument of the State's attorney regarding the possession of grappa (apparently an intoxicating beverage of some sort) in other dwelling houses." A transcript of the remarks which called forth these exceptions has not been furnished us and consequently we are not informed as to just what was said. In the absence of this the exceptions are not available. *Miles* v. *Fruit Co.,* 98 Vt. 1, 6, 124 Atl. 559; *Usher* v. *Severance,* 86 Vt. 523, 530, 531, 86 Atl. 741. And, for another reason, there is no affirmative showing of prejudice. *Wittig* v. *Burnap,* 99 Vt. 340, 342, 132 Atl. 39; *Russ* v. *Good,* 92 Vt. 202, 205-207, 102 Atl. 481.

■ In taking the fourth exception to the argument, respondent's counsel quoted what the State's attorney had just said: "The purpose of this case is to clean out the places where the stuff can be obtained." That this language was used is admitted in the State's brief. Even so, the context does not appear and for this reason we are unable to say whether the argument was improper or if so whether harm has resulted. See cases above cited. Indeed the ground of the exception was that there was no evidence that the respondent's premises were a place where intoxicating liquor could be obtained. But there was evidence of the illegal alcoholic content of the liquid and it was undisputed that Dennis had obtained it at the respondent's house. Therefore upon the ground alleged the exception is without merit.

■ In instructing the jury concerning the question of alcoholic content the court said: "Take into consideration the possibility of whether men would sit down and drink six glasses of something that had no alcohol in it, or not." The respondent excepted, upon the ground that the instruction "tends toward an inference that it would not be reasonable for two men to sit down and drink six glasses of ginger ale or milk or any other liquid." The probative value attributed by the court to this circumstance may be open to doubt, and the instruction is not approved, but if error it does not appear to have been prejudicial, and this exception is not sustained.

■ The court also instructed the jury that "if it (the liquid) is a spiritous or malt liquor, wine, beer or ale, under those terms, it is presumed to be intoxicating, but if it is some other liquid used for beverage purposes it must contain one-half of one per cent. alcohol at sixty degrees Fahrenheit." Under his exception to this part of the charge, the respondent argues that there was no evidence from which the jury would be justified in finding that the liquid in question was one of the classes of liquors presumed by the law to be intoxicating. Granting this, the evidence clearly made a jury question whether it came under the category of a beverage containing more than the legal alcoholic content, under section 2, No. 204, Acts 1921. At no time during the trial does it appear to have been otherwise claimed. The instruction, although in part inapplicable to the case, introduced no issue outside the evidence, and at most would be harmless error. *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 149, 130 Atl. 758.

■ The last exception to the charge was in the following language: "The respondent further takes exceptions to those parts of the court's charge relating to possession, which would also refer to furnishing." No fault was pointed out, no ground of objection was stated and the exception is altogether too general to require our attention. *Cummings* v. *Ins. Co.* 101 Vt. 73, 92, 142 Atl. 82; *Hambleton* v. *U. Aja Granite Co.,* 96 Vt. 199, 204, 118 Atl. 878; *In re Healy's Will,* 94 Vt. 128, 134, 109 Atl. 19; *Barnard* v. *Leonard,* 91 Vt. 369, 371, 100 Atl. 876; *In re Bean's Will,* 85 Vt. 452, 464, 82 Atl. 734.

Other exceptions to the charge raise questions which have already been considered. No error appears.

*Judgment that there is no error, and that the respondent take nothing by his exceptions. Let execution be done.*